EDWARD SCHICHLER, Respondent, v STATE OF NEW YORK, Appellant. (Claim No. 62861.) JANE SCHICHLER, Respondent, v STATE OF NEW YORK, Appellant. (Claim No. 63275.) CHERYL H. CONKLING, as Administratrix of the Estate of VINCENT J. GELOSO, Deceased, Respondent, v STATE OF NEW YORK, Appellant. (Claim No. 62606.) — Mahoney, P. J.

These claims arise out of a three-car accident which occurred on August 24, 1978 on Route 20, an east-west highway, a short distance east of the Village of Richfield Springs in Otsego County. Along the entire section of Route 20 which is involved herein, east and west traffic was separated by a double yellow line. The portion of Route 20 involved herein proceeded up a slight hill from west to east. The hill leveled off and Route 20 proceeded generally flat to the east. Throughout this section of Route 20, there is one westbound lane. Proceeding up the hill, there are two eastbound lanes separated by a dotted white line.

These lanes merge about 200 feet west (downhill) of the crest of the hill, and Route 20 proceeds with one lane eastbound. To the westbound driver, Route 20 curved slightly to the left near the point where the two eastbound lanes merge.

The structure of the lanes is crucial to claimants' assertion of negligence on the part of the State. Throughout the relevant section of Route 20, the paved portion was 30 feet wide. Where the highway consisted of one lane in each direction, the double yellow line was in the center of the highway. Each lane was 12 feet wide and there were three-foot shoulders. Where the highway consisted of one westbound and two eastbound lanes, each of the three lanes was 10 feet wide and there were no paved shoulders. The transition from two 12-foot lanes to three 10-foot lanes ran from about 50 feet west of the crest of the hill to about 150 feet further west. Thus, to a westbound driver approaching the crest of the hill and proceeding down the hill, the double yellow center line would appear to "move' five feet to the right and the white line designating the right of the highway would appear to "move" three feet to the right.

The section of Route 20 involved herein had a posted speed limit of 55 miles per hour in both directions. Westbound traffic was warned of the downhill grade, but was not warned of the curve to the left or the fact that there were two eastbound lanes coming up the hill. Eastbound traffic was warned of the merging of the two eastbound lanes.

On August 24, 1978 at 4:30 P.M., claimant Edward Schichler was driving his van eastbound on Route 20. While in the section of the highway which had two eastbound lanes, Schichler pulled into the left lane and passed a car driven by Shirley Banner. Schichler then passed the point where the two eastbound lanes began merging and began moving over to the right. At no time did any part of the Schichler vehicle cross the double yellow center line. At the same time, Vincent Geloso, accompanied by a passenger, was driving westbound. He drove over the crest of the hill and started down the hill. Inexplicably, the Geloso car crossed the double yellow center line and struck the Schichler van virtually head-on. The point of the collision was a short distance east (uphill) of the point where the two eastbound lanes began to merge. Both vehicles were fully within the eastbound lane. The impact of the collision propelled the Schichler van into the air and it came to rest on the Banner car which it had just passed.

As a result of the accident, Geloso was killed and the other individuals were severely injured. A number of actions were commenced based on this accident. The ones we are concerned

with on this appeal are claims against the State by Schichler, his wife Jane Schichler (a derivative action) and the administratrix of Geloso's estate. After a trial, the Court of Claims found the State liable and apportioned culpability as follows: 60% to Geloso, 30% to the State and 10% to Schichler. After a trial on damages, the Court of Claims assessed Schichler's damages at $900,000, his wife's damages at $100,000 and Geloso's estate's at $62,000. The court applied the State's apportioned culpability to these figures and entered the appropriate judgments. The State has appealed from the three judgments and contends that it was not liable for the accident or, in the alternative, that each of the damage awards was excessive.

The State has "a duty to construct and maintain its highways in a reasonably safe condition in accordance with the terrain encountered and the traffic conditions to be reasonably apprehended" (*Brooks v New York State Thruway Auth.,* 73 AD2d 767, 768, *affd* 51 NY2d 892; *see, Agius v State of New York,* 50 AD2d 1049, 1050). The failure to warn users of a highway of existing hazards has been held to be a breach of such duty (*see, Wingerter v State of New York,* 79 AD2d 817, 818, *affd* 58 NY2d 848). In this case, claimants contend that the State's negligence consisted of its failure to warn westbound traffic of the transition from two lanes to three and of the curve to the left near where the two eastbound lanes merged. Also, claimants contend that the State should have either extended the three-lane arrangement to the east beyond the crest of the hill or terminated such arrangement further down the hill so that westbound traffic would have had a clear view of the transition and consequent "moving" of its lane to the right. Even assuming that claimants are correct that the above-discussed failures constitute negligence on the part of the State, it is clear that it did not proximately cause the accident.

Liability would attach against the State only if the accident was a natural and probable consequence of the State's negligence (*see, Dunn v State of New York,* 29 NY2d 313, 318). Claimants sought to prove that, due to the negligence of the State, Geloso was unaware that his westbound lane was "moving" to the right. In support claimants offered proof of informal observations of the area where the accident took place demonstrating that a high percentage of westbound cars cross over the double yellow center line. However, none of these observed cars crossed entirely into the eastbound lane as Geloso's vehicle did. Claimants' evidence could support an inference that the negligence of the State would cause a westbound car to cross the center line such that a small portion of the car would be in the

eastbound lane. However, in this case, the Geloso vehicle was completely in the eastbound lane when it collided with the van operated by Schichler. Such a drastic departure from the westbound lane is not a natural and probable result of the acts of the State which are claimed to have constituted negligence. Rather, it is apparent that the course taken by the Geloso vehicle was a result of the manner in which it was operated (cf. *Gregware v State of New York,* 60 AD2d 659). This is confirmed by a review of the exhibits, including photographs of the view for a westbound driver along the stretch of Route 20 involved. Once a westbound driver goes beyond the crest of the hill and proceeds down, the transition of the eastbound lane to two lanes, along with the concomitant "moving" of the westbound lane to the right are clearly visible at a point well before the accident took place. Since Geloso died in the accident, it will never be known why his car crossed into the eastbound lane. However, it is clear that such was not the natural and probable consequence of the acts of negligence alleged against the State.

Judgments reversed, on the facts, without costs, and claims dismissed. Mahoney, P. J., Casey, Weiss and Levine, JJ., concur.