■ MERILYN R. NILES, as Executrix of WILLIAM NILES, Deceased, Appellant, v STATE OF NEW YORK, Respondent. [607 NYS2d 480] —White, J. Appeal from a judgment in favor of the State, entered August 13, 1992, upon a decision of the Court of Claims (Lyons, J.).

William Niles* commenced this negligence action to recover damages he sustained when the vehicle he was driving turned over after striking a guardrail located on the exit ramp leading from U.S. Route 9 to Livingston Avenue in the City of Albany. Following a trial, the Court of Claims dismissed the claim after finding that the State was not negligent. This appeal ensued.

The theory underlying this claim is that the State improperly maintained a barricade system along Route 9 that was intended to channel traffic to the right so that it would travel up the exit ramp to Livingston Avenue. To prevail on this theory, claimant had the burden of proving that the State affirmatively created a dangerous condition of which it had

---

* Merilyn R. Niles was substituted as claimant in place of William Niles, who died during the pendency of this appeal.

notice *(see, Fiege v State of New York,* 189 AD2d 748) or that the placement of the barricades "evolved without adequate study or lacked [a] reasonable basis" *(Weiss v Fote,* 7 NY2d 579, 589; *see, Cipriano v State of New York,* 171 AD2d 169, 172, *lv denied* 79 NY2d 756).

The proof adduced at trial shows that on March 5, 1988, at about 7:00 P.M., Niles was driving his vehicle south on Route 9 in Albany. As he neared the end of Route 9, the travel lanes were reduced from three to one by a traffic control device of moveable barricades placed progressively further to the right of the guardrail until only the right lane leading to the exit ramp remained open. North of the area where the barricades began, there were two overhead signs which read "ALL TRAFFIC EXIT 800 FEET" and, further on, on a highway overpass, there were two more signs indicating that traffic should go to the right. There were also reflectors on the barricades, a yellow edge line leading to the exit ramp and street lighting.

Niles testified that as he approached the barricades it was dark and he was driving in the left lane. After seeing the barricades, he began to move to the right but was uncertain about which way to go. As he neared the Livingston Avenue exit, he noticed a few barricades and a guardrail on the exit ramp. Although the cars in front of him went to the right, he believed he should drive to the left of the guardrail. As he did so, his vehicle hit a patch of snow, struck the guardrail and rolled over several times, coming to rest on its roof.

Niles' proof that the barricades were improperly maintained was elicited from a passenger in his vehicle. He testified that after the accident he noted that the barricades were along the eastern curb line of Route 9 instead of along the yellow edge line, thereby giving motorists the impression they could continue going straight instead of having to go to the right and onto the exit ramp. The expert witnesses agreed that if the barricades were placed in this manner, they would have been inadequate and would have confused motorists. Edward Dannehy, the State Regional Highway Maintenance Engineer responsible for maintaining Route 9, testified that he inspected the barricades two to four weeks prior to the accident and they were placed along the yellow edge line and were not at the curb line. The Court of Claims accepted this testimony and found that the barricades were properly placed.

In addition to the claim that the barricades were not properly placed, Niles' expert opined that, based on the Manual of Uniform Traffic Control Devices (hereinafter the Manual), an additional sign advising traffic to go to the right

should have been erected and a hazard marker sign should have been placed at the end of the guardrail that Niles struck. The Court of Claims disagreed, finding that the existing signage was within the range of discretion sanctioned by the Manual.

Because this was a nonjury trial, we may weigh the relative probative force of the conflicting inferences that may be drawn from the testimony and grant the judgment which, upon the evidence, should have been granted by the trial court *(see, Cordts v State of New York,* 125 AD2d 746). However, we must give due deference to the decision of the Trial Judge who was in a better position to assess the evidence and the credibility of the witnesses *(see, Saulpaugh v State of New York,* 132 AD2d 781).

Applying these principles here, we find no reason to disturb the Court of Claims' determination regarding the placement of the barricades inasmuch as the observations of Niles' witness were not corroborated and were made at night immediately after experiencing the trauma of being involved in an accident. Given the number of signs indicating the exit, the barricades with reflectors, placed along the yellow edge line, the street lighting and the absence of proof that additional signage would have been more effective than the existing signage and indicators, we see no reason to disturb the Court of Claims' finding on the adequacy of the signage, particularly where the evidence showed that it was within the range of discretion sanctioned by the Manual.

We further agree with the Court of Claims' finding that the State did not have notice of a dangerous condition in view of the evidence that in the three-year period prior to this accident, approximately 11.3 million vehicles drove through this area without incident *(see,* Richardson, Evidence § 196, at 172 [Prince 10th ed]). Our search of the record also discloses that Niles did not adduce sufficient evidence to establish either an inadequate study or an unreasonable basis for the State's traffic plan for this segment of Route 9 *(compare, Alexander v Eldred,* 63 NY2d 460, 466-467; *Ganios v State of New York,* 181 AD2d 859).

Lastly, it is argued that the Court of Claims made two evidentiary errors. We agree that the Dannehy memorandum should have been admitted as a business record because the fact that Dannehy did not have personal knowledge of the conditions of the barricades at the time of the accident affects the memorandum's weight, not its admissibility *(see, Kelly v*

*Wasserman,* 5 NY2d 425, 430; *Briar Hill Apts. Co. v Teperman,* 165 AD2d 519; *see also,* CPLR 4518 [a]). The error was harmless, however, because the memorandum merely indicated that some of the barricades had to be replaced, without any indication that they were improperly placed. The limitation on the admission of the photographs was proper because they were taken five days after the accident and there was no testimony that they fairly and accurately depicted the scene on the day of the accident *(see, Leven v Tallis Dept. Store,* 178 AD2d 466).

Accordingly, based upon the foregoing analysis, we affirm the judgment of the Court of Claims.

Cardona, P. J., Mikoll, Crew III and Weiss, JJ., concur. Ordered that the judgment is affirmed, without costs.