■ ARTHUR PATTI et al., Appellants, v STATE OF NEW YORK, Respondent. [630 NYS2d 137] —Yesawich Jr., J. Appeal from a judgment in favor of the State, entered February 16, 1994, upon a decision of the Court of Claims (Benza, J.).

Claimant Arthur Patti (hereinafter claimant) sustained serious injuries on October 25, 1988 when the car in which he was a passenger overturned after colliding with a guardrail at the Livingston Avenue exit off Interstate Route 90 in the City of Albany. At trial, the driver of the car, Adrianne Daniels, testified that as she was exiting the highway in search of a place to turn around, a gap in the series of barricades channeling traffic to the right and up the exit ramp caused her to become confused as to the proper direction of travel, in that the road appeared to her to continue both to the right and to the left of the barricades. Daniels claims that it was only after beginning to move her car to the left of the row of barricades that she became aware of the guardrail in front of her, leaving her with too little time to react before the collision.

In this action, claimant and his wife, who seeks derivative relief, contend that the accident was caused by the State's negligence in designing, constructing or maintaining the system of barricades and signs intended to direct traffic in the area of the accident. Because the Judge who presided over the trial died prior to rendering a decision, the parties, in lieu of a new trial, stipulated to have the matter decided on the basis of the written record, exhibits and transcripts. A judgment was thereafter entered in favor of the State and claimants appeal.

Having assessed the probative force of the conflicting evidence in this record and the inferences that may be drawn therefrom (see, Freund v State of New York, 137 AD2d 908, 909, lv denied 72 NY2d 802), we affirm the judgment. The State demonstrated that, despite the fact that the barricades were not part of the original highway plan for this exit area, where the road effectively ends and all traffic is channeled onto an exit ramp to the right, their use and arrangement did not con-

stitute a hazardous condition, as claimant suggests, but rather provided motorists with sufficient guidance to permit this unusual area to be navigated safely. It was also established that the array of barricades was in compliance with the only clear standards in the manual for the placement of "channelizing devices", which dictated a maximum distance between barricades based on the posted speed limit in the area.

Claimant, to support his contention that the State was negligent in its placement of barricades, and more particularly in leaving a larger gap between the last barricade and the guardrail, relies on the testimony of two experts, each of whom asserted that the barricade configuration at issue violated accepted standards as outlined in the "Manual of Uniform Traffic Control Devices", the generally recognized authority in this field (*cf., Donato v County of Schenectady*, 156 AD2d 859, 860). This testimony was, however, internally inconsistent, and its probative force was eroded further by the fact, brought out on cross-examination (and apparent from the manual itself), that the figures upon which claimant's experts relied are merely examples, are not intended to establish mandatory standards and are, in several respects, inapplicable to the situation at issue. In our view, the testimony of the State's experts, who opined that the configuration of barricades was in no way defective or hazardous, is simply more credible.

Nor could the fact that one prior accident had occurred at this same, very busy location (*see, Niles v State of New York*, 201 AD2d 774, 776), under markedly different circumstances, be considered to have put the State on notice of a dangerous condition (*see, Friedman v State of New York*, 67 NY2d 271, 286; *Rooney v State of New York*, 111 AD2d 159, 161). In short, on this record it cannot be said that claimant has carried his burden of proving that the State breached its duty to design, construct and maintain its highways in a reasonably safe condition for the benefit of the traveling public (*see, Friedman v State of New York, supra*, at 283; *Bradley v State of New York*, 132 AD2d 816, 818).

Moreover, the accident occurred on a clear night, and the experts all agreed that there was ample lighting in the area. There was also evidence that the guardrail itself could have been seen from as much as 250 feet away; claimant's expert concedes that it was visible, even without the warning marker he recommended, from approximately the point where Daniels cleared the last barricade, and apparently made the decision to veer left. There is no indication that she did not see, or was confused by, the multiple signs and other devices that

unmistakably directed all traffic to proceed to the right, up the ramp. Thus, while Daniels maintains she was unsure of the proper direction of travel, the evidence, considered in its entirety, including the photographs submitted by both parties, better supports an inference that the accident was caused, not by the allegedly negligent layout of warning devices on the roadway, but rather by Daniels' apparently deliberate decision to disregard the clear message they communicated—she was evidently attempting, in this unfamiliar area, to find a place to turn around when the accident occurred—coupled with her inattention to the guardrail as well as the solid yellow line which clearly defined the proper path of travel (*see, Donato v County of Schenectady, supra,* at 861; *Schichler v State of New York,* 110 AD2d 959, 961-962, *affd* 66 NY2d 954).

Mikoll, J. P., Crew III, Casey and Spain, JJ., concur. Ordered that the judgment is affirmed, without costs.