■ COLLETTE M. CLAIRMONT, Appellant, v STATE OF NEW YORK, Respondent. (Claim No. 91958.) [716 NYS2d 760] —Graffeo, J. Appeal from a judgment of the Court of Claims (Benza, J.), entered June 22, 1999, upon a decision of the court in favor of the State.

Claimant, a student at the State University of New York at Albany (hereinafter SUNYA), was injured when she was struck by a door. The door in question was a fire door which separated the lower level of an academic building from the tunnel system under the SUNYA academic buildings, a passageway used by service personnel, students and faculty to traverse the campus. The accident occurred when claimant approached the door, intending to pull it open, and a SUNYA employee simultaneously came through the door from the other side, causing it to swing toward claimant and hit her in the face.

The sole theory of liability which claimant pursued against

the State at the bifurcated trial on the issue of liability was that the door was negligently designed and constituted a dangerous condition. The Court of Claims dismissed claimant's action, finding that the door was reasonably safe and that the accident was not caused by negligence attributable to the State. Claimant appeals and we affirm.

The duty owed by the State to individuals who enter upon State-owned property is the same as that of any other landowner: to maintain the premises in a reasonably safe condition under the prevailing circumstances (*see, Basso v Miller,* 40 NY2d 233, 240-241; *Matter of Boettcher v State of New York,* 256 AD2d 882). It is well settled that "[t]he State is not * * * under an obligation to insure against every injury incurred" on its premises (*Matter of Boettcher v State of New York, supra,* at 882; *see, Killeen v State of New York,* 66 NY2d 850, 851; *Condon v State of New York,* 193 AD2d 874, 875).

At trial, in support of her claim that the door constituted a dangerous condition due to its defective design, claimant offered the testimony of an architect who opined that the "vision panel" in the door was of insufficient size and poorly positioned. Because this window was placed in the center of the four-foot wide door at a height of 5 feet, 2 inches, he maintained that it was too high and not placed close enough to the doorknob to effectively apprise individuals approaching the door of the presence of someone on the other side. As a result, he asserted that individuals coming from either direction could not readily observe persons located on the opposite side, thereby posing a danger of injury when the door would suddenly swing open.

Notwithstanding the expert's opinion, affording the Court of Claims the deference to which it is entitled as the trier of fact (*see, Krafchuk v State of New York,* 250 AD2d 962, 964), we find no basis to disturb the court's conclusion that the fire door did not constitute a dangerous condition and, as such, that the State was not liable for claimant's injuries (*see, Malossi v State of New York,* 255 AD2d 807; *Patti v State of New York,* 217 AD2d 882; *Ahnert v State of New York,* 127 AD2d 927; *see generally, Dello v State of New York,* 105 AD2d 571). On cross-examination, the architect conceded that there is no requirement that fire doors such as the one in question contain a vision panel or window, nor is there any minimum size requirement or proper placement specification for such a component. Indeed, the only standard in the industry applicable to a vision panel in a fire door is a maximum size requirement; that is, if such a feature is incorporated in the design, it must not exceed 100 square inches. The architect acknowledged that the vision

panel in question did not exceed the maximum size specification as it was 69 square inches. In addition, claimant's expert acknowledged that there is no requirement that a vision panel be placed in any particular location on a fire door.

Indeed, although the door at issue was likely installed in the 1960s, the architect conceded that the door's design, including the size and placement of the vision panel, was not obsolete at the time of the accident or at trial, and that doors with substantially the same design were still manufactured and offered for sale by fire door vendors. Claimant offered no evidence that the design of the door did not comport with industry standards, or that it had been recognized within the industry as unsafe. Rather, the crux of the architect's opinion was that safer designs were available and should be used.

Claimant also did not offer sufficient evidence of the existence of other similar accidents involving this door or other doors of the same design in support of her contention that it posed an unreasonable hazard and that SUNYA had notice of its allegedly defective design. The only indication of other incidents involving the door was derived from the somewhat equivocal testimony of a SUNYA Research Foundation employee called as a witness by claimant. After this witness testified that she had not observed other accidents at the location in question, claimant's counsel attempted to impeach her credibility by questioning her regarding contradictory statements she had made at her deposition to the effect that she "had seen other people get hit there" and had hit other people herself with the door. Even if these prior inconsistent statements could properly be considered as direct evidence, rather than solely for credibility purposes, the statements did not constitute proof of a dangerous condition as no evidence was offered that "the physical conditions and circumstances of the other accidents were substantially similar to the one at issue" (*Malossi v State of New York, supra*, at 807-808).

In sum, an ample basis exists in the record for the Court of Claims' decision not to credit the opinion of the architect and to find instead that the door did not present an unreasonable hazard to individuals on the SUNYA campus. Having reviewed the evidence presented at trial, we concur with the court's determination that the accident arose solely from the conduct of claimant and/or the maintenance worker and was not a result of any defect in the reasonably designed door.

We decline to address claimant's motion at oral argument to amend the complaint to plead a new theory of negligence predicated on vicarious liability as there is no indication this

relief was requested in the Court of Claims (*see, Criscuola v Power Auth.*, 188 AD2d 951, 952-953, *revd on other grounds* 81 NY2d 649; *see generally, Figueroa v Tso*, 251 AD2d 959).

Mercure, J. P., Spain, Carpinello and Mugglin, JJ., concur. Ordered that the judgment is affirmed, without costs.