(April 26, 2005)

■ JULIA GIBBS, Respondent, v PORT AUTHORITY OF NEW YORK et al., Defendants, and MADISON SQUARE GARDEN et al., Appellants. [794 NYS2d 320]—

Order, Supreme Court, Bronx County (Howard R. Silver, J.), entered on or about March 9, 2004, which denied the motions by defendants Madison Square Garden, HKM Productions and Ivar Productions for summary judgment dismissing the complaint and all cross claims, unanimously reversed, on the law, without costs, the motions granted and the complaint and all cross claims against these defendants dismissed. The Clerk is directed to enter judgment accordingly.

Plaintiff commenced the instant action for personal injuries sustained after she slipped and fell on a wet floor in a hallway located at Madison Square Garden (MSG). She had gone there to work as an extra in the filming of a television commercial produced by HKM Productions and Ivar Productions (collectively HKM). HKM obtained MSG's arena for the shooting pursuant to a licensing agreement which, in relevant part, prohibited HKM from altering the premises or interfering with "any existing union jurisdictional arrangement relating to the Building." Because the custodial and cleaning staff utilized at MSG were unionized, licensees such as HKM were prohibited from performing custodial tasks and their employees did not have access to custodial supplies or tools on premises.

On the date of the accident, plaintiff and several acquaintances reported to the employees' entrance of MSG at approximately 7:45 A.M. Once there, they joined a line of approximately 40 people waiting outside MSG. It was raining very hard for the entire 30 minutes plaintiff waited outside. Eventually, plaintiff and the others entered the building, where a security guard was sitting behind a desk in a small room. They were then instructed by the production crew to follow the line through a set of doors and into a hallway.

As plaintiff waited to check in, she noticed a "lot of water" on the floor, which "must have been scattered [there] from the umbrella[s] and people [who] were walking in." She observed at least two persons on the line slip, prompting her to wonder "why nobody was cleaning it up." Recalling "the whole area

[as] covered with water," she then slipped and fell herself. Plaintiff declined medical attention, however, and remained at the filming until 4:30 P.M. She then asked for an ambulance and was taken to a local hospital. Plaintiff was ultimately diagnosed with a torn meniscus of the right knee, which required arthroscopic surgery. Thereafter, plaintiff commenced the instant negligence action.

MSG and HKM moved for summary judgment dismissal on the ground that neither defendant created nor had actual or constructive notice of the allegedly dangerous condition. HKM further argued that it owed no duty to plaintiff because the licensing agreement deprived it of any right to maintain or control the premises. Supreme Court denied both motions, concluding that genuine issues of fact exist as to how long the water was on the floor and whose responsibility it was to clean it. We disagree.

Liability for a dangerous condition on property may only be predicated upon occupancy, ownership, control or special use of such premises (*see Balsam v Delma Eng'g Corp.*, 139 AD2d 292, 296 [1988], *lv denied* 73 NY2d 783 [1988]), and none of these bases support liability under the facts of this case. The record discloses that HKM's presence at MSG for a limited 24-hour period was solely as a licensee, as confirmed by the MSG-HKM license agreement. Such an agreement merely vests the licensee with authority to do a particular act or series of acts upon the licensor's land (*see Ark Bryant Park Corp. v Bryant Park Restoration Corp.*, 285 AD2d 143 [2001]). It does not give the licensee any possessory interest in the premises (*American Jewish Theatre v Roundabout Theatre Co.*, 203 AD2d 155 [1994]).

In support of its motion for summary judgment, HKM submitted evidence demonstrating that under the terms of the license agreement, it was prohibited from engaging in any custodial or cleaning activity on MSG's premises because those duties were within the exclusive jurisdiction of MSG's unionized custodial employees. HKM had no access to custodial supplies such as brooms, mops or mats, which were stored in locked closets, and its employees were not permitted to bring their own supplies or cleaning utensils. In the absence of any authority to maintain or control the area in question, or to correct any unsafe condition, HKM owed no duty of care with respect to any unsafe condition on MSG premises (*Masterson v Knox*, 233 AD2d 549, 550 [1996]; *see also Siegel v Hofstra Univ.*, 154 AD2d 449, 450 [1989]).

In response to this prima facie showing of no duty, plaintiff failed to adduce any evidence raising a triable issue of fact as to

HKM's purported authority to control or maintain the condition of the hallway where plaintiff fell. The fact that HKM had a license to use the hallway for its own purpose did not, by itself, give rise to a duty to maintain the premises (*Masterson*, 233 AD2d at 550).

Supreme Court further erred in finding questions of fact as to whether MSG had constructive notice of the wet condition in the hallway. To constitute constructive notice of a dangerous condition, the defect or condition must be "visible and apparent and . . . must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it" (*Gordon v American Museum of Natural History*, 67 NY2d 836, 837 [1986]).

Even assuming that the water on the floor was visible and apparent, there is no proof in the record as to how long the water was on the floor. Although plaintiff testified that at least two other persons slipped before her, she admitted that she did not know how long the water was on the floor. Nor is there any evidence that any MSG employees were in the immediate vicinity where plaintiff fell before the accident. Given "the total lack of evidence on the issue of the length of time the [condition] was present" (*Berger v ISK Manhattan, Inc.*, 10 AD3d 510, 512 [2004]), there is no evidence from which a jury could infer that such condition existed for a sufficient period to allow MSG or its employees to discover and remedy it (*Keum Choi v Olympia & York Water St. Co.*, 278 AD2d 106 [2000]; *cf. Giuffrida v Metro N. Commuter R.R. Co.*, 279 AD2d 403 [2001]; *Rose v Da Ecib USA*, 259 AD2d 258 [1999]).

In addition, because the evidence in this case strongly suggests that any water on the floor had been tracked into the building by the persons immediately preceding plaintiff on the line, or the umbrellas they were carrying, no inference of constructive notice arose (*see Garcia v Delgado Travel Agency*, 4 AD3d 204 [2004]; *Spooner v New York City Tr. Auth.*, 298 AD2d 575 [2002]). MSG did not have an obligation to provide a constant remedy to the problem of water being tracked into a building in rainy weather (*Yearwood v Cushman & Wakefield*, 294 AD2d 568 [2002]; *Keum Choi*, 278 AD2d at 107). Concur—Buckley, P.J., Tom, Marlow, Gonzalez and Catterson, JJ.