■ MICHAEL J. SOLAZZO, JR., et al., Appellants, v NEW YORK CITY TRANSIT AUTHORITY et al., Respondents. [800 NYS2d 698]—

Order, Supreme Court, New York County (Robert D. Lippmann, J.), entered October 1, 2003, which granted the motion of defendants Transit Authority and Metropolitan Transportation Authority for summary judgment dismissing the complaint, affirmed, without costs.

Plaintiff contends that defendants are liable as property owners because he fell on the wet, slippery station floor during an ongoing winter storm. Generally, however, property owners cannot be held liable for a fall caused by a winter storm while the storm is in progress, or for a reasonable time thereafter (*Valentine v City of New York,* 86 AD2d 381, 383, 384 [1982], *affd* 57 NY2d 932 [1982]). Therefore, there is no liability for a plaintiff's

injuries resulting from a fall on accumulated snow, rain, ice, sleet or hail until after the storm has ended, so as to allow the defendants a reasonable period of time to clean the area (*id.*)

In this case, plaintiff testified that there was "a heavy storm" where "it rained or snowed for a long period of time" and it was "just nasty out all day." The evidence here undoubtedly demonstrated that the accident occurred while the storm was still ongoing, a time during which defendants had no duty to clear the area of water accumulation. The law does not require defendant New York City Transit Authority (NYCTA) to constantly maintain dry station floors during a storm (*Hussein v New York City Tr. Auth.*, 266 AD2d 146, 146-147 [1999]). The storm-in-progress defense is applicable here and defendants have presented a prima facie case for dismissal.

In an attempt to circumvent the clear precedent of this Court, the dissent states the basic premise that "where a property owner has actual knowledge of the tendency of a particular dangerous condition to recur, he or she is charged with constructive notice of each specific recurrence of that condition." However, in the instant case, defendants only had a "general awareness" that there may be some dangerous condition present on the platform caused by inclement weather. This "general awareness" is legally insufficient to charge defendants with constructive notice of the specific condition that resulted in plaintiff's injuries (*Piacquadio v Recine Realty Corp.*, 84 NY2d 967, 969 [1994]).

A plaintiff may establish constructive notice by demonstrating a recurring dangerous condition in the area of the slip and fall that was routinely left unaddressed (*O'Connor-Miele v Barhite & Holzinger*, 234 AD2d 106, 106-107 [1996]). Here, however, plaintiff, at most, proved that defendants had a general awareness that water may be present on the station floor during periods of inclement weather. That heavy precipitation often led to the accumulation of deep puddles of water on the floor of the station where plaintiff fell does not tend to show that defendants knew or should have known that the particular area in which plaintiff fell was dangerous during inclement weather. Furthermore, NYCTA'S employee testified without contradiction that he was unaware of any other accidents caused by slippery tiles at the station, demonstrating that the allegedly dangerous condition was not brought to defendants' attention by the occurrence of similar accidents in the past.

On previous stormy days, defendants placed mats on the floor between the base of the stairs and the turnstile. Nonetheless, "[d]efendant[s] [are] not required to cover all of [their] floors

with mats, nor to continuously mop up all moisture resulting from tracked-in, melting snow" (*Kovelsky v City Univ. of N.Y.*, 221 AD2d 234, 235 [1995]). Defendants should not be given the impossible burden of covering all areas that may be touched by rain or snow during a continuously stormy period. This is especially true since, as plaintiff's engineer testified, most of the water on the floor was deposited there by persons entering from the street. Absent a complete shutdown of the public subway station, preventing such an accumulation in the station is simply not possible. Nor does the evidence concerning the putting down of mats tend to show a recurring dangerous condition in the particular area where plaintiff fell. NYCTA's station supervisor testified that the mats were put down on the station platforms depending "on the condition, and most of the time, to my recollection, they were put there for a while." There is no evidence that the mats were always put down during inclement weather, or were put down in the area of plaintiff's fall every time it rained or snowed. Concur—Saxe, Gonzalez and Catterson, JJ.

Mazzarelli, J.P., and Ellerin, J., dissent in a memorandum by Ellerin, J., as follows: I find that the evidence submitted by plaintiffs raises an issue of fact that precludes summary judgment, and accordingly would reverse the order of the motion court.

Plaintiff Michael Solazzo slipped and fell on what he described in his notice of claim as a "slippery, slick, wet tile floor with puddles of dirty slush, ice and water" at the bottom of a staircase at an entrance to the Fulton Street subway station in Manhattan. The accident happened between 3:00 and 3:30 P.M. on January 13, 2000. It had been raining, sleeting, snowing, and/or hailing all day.

Plaintiff's brother-in-law, who entered the station with plaintiff, averred that he had passed through that subway station every weekday for months before the date of plaintiff's accident, and that he had often observed that with heavy precipitation, puddles of water accumulated at the back of the steps. He described the wet floor and a puddle of dirty slushy water in the area where plaintiff fell, and said that the condition of the floor when plaintiff fell was similar to the condition he had seen on those previous occasions.

Plaintiff averred that whenever it rained or snowed for a long time or there was a storm, there would be a deep puddle on the floor of the station at the bottom of the stairs where he fell, and that he had observed deep puddles in that area on more than 10 occasions before the date of his accident. He described the puddle in which he slipped as two to three inches deep.

Plaintiff also averred that on numerous occasions he had seen mats on the floor of the station from the base of the stairs to the turnstile, but that there were no mats on the floor on the day of his accident.

The testimony of Transit Authority employees established that there were mats available at the station, which the station cleaners would place on the floor when there was "some wet surface condition," that the mats were used "to reduce hazardous conditions," and that sand was sprinkled on the stairs when they were wet.

Defendants argue that property owners cannot be held liable for a fall caused by rain or snow during a winter storm or for a reasonable time thereafter, because public facilities cannot be kept "bone dry" during a storm, and it is unreasonable to require the Transit Authority to post "an army of men and women with mops during a storm to constantly clean" every subway and bus station and stop (*see e.g. Hussein v New York City Tr. Auth.*, 266 AD2d 146, 146 [1999]). Defendants also argue that the formation of puddles during a storm is not a recurring condition for which property owners can be held liable, because "a 'general awareness' that a dangerous condition may be present is legally insufficient to constitute notice of the particular condition that caused plaintiff's fall" (*Piacquadio v Recine Realty Corp.*, 84 NY2d 967, 969 [1994], quoting *Gordon v American Museum of Natural History*, 67 NY2d 836, 838 [1986]).

However, where a property owner has actual knowledge of the tendency of a particular dangerous condition to recur, he or she is charged with constructive notice of each specific recurrence of that condition (*Weisenthal v Pickman*, 153 AD2d 849, 851 [1989]). Since it may reasonably be inferred that a property owner has actual knowledge of a dangerous condition that is recurrent in inclement weather (*Padula v Big V Supermarkets*, 173 AD2d 1094, 1096 [1991]), "it is not necessary that plaintiff prove that the defendant had actual knowledge of the accumulation of rain water on the date of her accident, but merely that the condition was recurring over a period of time with each successive rainfall, thereby putting the defendant on constructive notice of the condition" (*David v New York City Hous. Auth.*, 284 AD2d 169, 171 [2001]).

Here, plaintiff submitted evidence that his accident occurred in mid-afternoon and precipitation had been falling all day, that whenever there was heavy or long-lasting rain or snow, puddles accumulated on the floor of the station at the bottom of the stairs where he fell, and that on previous rainy, snowy or stormy days mats had been placed on the floor between the base of the

stairs and the turnstile. This evidence tends to show that defendants failed to use reasonable care to remedy the particular condition, of which they had constructive notice, that caused plaintiff's fall (*see Pignatelli v Gimbel Bros.*, 285 App Div 625, 626-627 [1955], *affd* 309 NY 901 [1955]; *see also Migli v Davenport*, 249 AD2d 932 [1998]; *cf. Hammer v KMart Corp.*, 267 AD2d 1100, 1100 [1999], *lv denied* 95 NY2d 757 [2000] [plaintiff "failed to prove that . . . defendant knew that, during inclement weather conditions, water accumulated on the floor in the aisle where she fell"]).