Order, Supreme Court, Bronx County (Kenneth L. Thompson, Jr. J.), entered July 13, 2010, which granted defendant’s motion for summary judgment dismissing the complaint, reversed, on the law, without costs, and the motion denied.
Plaintiff seeks damages for personal injuries he sustained when he allegedly slipped and fell on the wet tile floor of defendant’s ATM vestibule. In support of its motion for summary judgment, defendant relied primarily upon plaintiffs deposition testimony. Plaintiff testified that his accident occurred on February 25, 2005, at around 11:00 or 11:30 a.m., when he entered the ATM lobby at defendant’s bank. At the time, he was wearing rubber boots. It was not raining or snowing, although it had snowed the night before, and it was “icy and slushy” that morning. There was some form of precipitation on the sidewalk in front of the doorway to the bank, which plaintiff described as “[mjelted ice.” The sidewalks in the immediate area were intermittently covered with slush or melted ice and salt.
Plaintiff’s accident occurred after he had entered the bank lobby and taken four or five steps inside, past the threshold area. As he walked into the lobby, he wiped his feet on a mat or rug before stepping onto the tiled portion of the floor. He fell as he walked towards the ATMs. Both of plaintiff’s feet slipped, causing him to fall backwards. His back and head hit the ground *643 first, causing him to feel weak and dizzy, although he did not lose consciousness.
Plaintiff did not notice the slippery condition of the floor until he fell. There were no signs warning of a wet floor and the lighting conditions were “clear.” When the ambulance arrived at the bank, plaintiff realized that his clothes, particularly, the back of his pants, were wet.
Defendant also relied upon the deposition testimony of its facilities manager, Paul Deri, as to its floor covering procedures. Deri testified that the carpet or runner in the ATM vestibule is set into the floor and is not removable and that it is there for customers to wipe their feet on before they enter the main branch. The mat stretches from the entry door, through the ATM vestibule, and up to the interior door leading to the main lobby. It does not run from the entrance to the ATMs. Deri explained that additional mats would “perhaps” be placed in the ATM vestibule “if weather required it and if [they] were available.” He said that the usual and customary procedure for dealing with inclement weather is “to have [our] mats out to keep people’s feet dry and clean and things [safe].” Branches could request additional cleaning services “[i]f things got significantly bad.” These procedures were not part of any written rule or policy, however, and were typically left to the branch manager’s discretion. On the day of the accident, there were no mats in the ATM vestibule.
In opposition to defendant’s motion, plaintiff relied upon his deposition, as well as that of nonparty witness Patrick Carroll, a former employee of defendant. Carroll testified that in February 2005, he was a vice president, assigned to manage the branch where plaintiffs accident occurred and was present on the day of the accident, although he did not see the accident happen. Carroll testified further that the branch’s customary procedure for inclement weather was to place a yellow tent sign in the main lobby cautioning customers as to the wet floors. During the day, if there was a lot of water in the ATM area, someone would be told to mop it up, but no particular person had the responsibility to maintain the cleanliness of the vestibule. Carroll specifically stated that when it was wet outside, the tiled area between the embedded mat and the ATM machines would “absolutely” became wet. He said that on the day of the accident, no yellow tent sign was placed in the ATM lobby.
When he reached the ATM lobby, Carroll did not notice any water or ice near the man on the floor. His assumption was that he had slipped on ice or snow that he had carried in from outside on the bottom of his shoes. He explained, “If you are not standing on the rug and you are on the tiles, it will be slippery.”
*644 Supreme Court erred in granting summary judgment to defendant, because there are triable issues of fact as to whether an unremedied recurring dangerous condition caused plaintiffs injury (see e.g. Colbourn v ISS Intl. Serv. Sys., 304 AD2d 369, 370 [2003]). The record shows that while the previous night’s snowstorm had ended well before plaintiffs fall, there was still ice and slush outside, and that when it was wet outside, the tile floor near the ATMs where plaintiff fell became wet. Additionally, there were no mats or yellow tent signs in the ATM vestibule on the day of plaintiff’s accident. Contrary to the dissent’s allegations, plaintiff does not contend that the tile floor was generally slippery, which is insufficient to establish liability (see Piacquadio v Recine Realty Corp., 84 NY2d 967 [1994]). He argues that a slippery condition occurred every time there was inclement weather, in the precise area where he fell and that defendant routinely left it unaddressed (see David v New York City Hous. Auth., 284 AD2d 169, 171 [2001]).
Friedman J., dissents in a memorandum as follows: Plaintiff seeks to recover damages for injuries he incurred when he slipped and fell in the defendant bank’s ATM lobby, which he had just entered from outside. Although it was no longer snowing when the incident occurred, the record establishes — as the majority concedes — that “there was still ice and slush outside” at that time, making it inevitable that people entering the lobby would continuously track moisture onto the floor. There was a permanently inset mat in the floor of the ATM lobby leading from the exterior doorway to the entrance to the main bank lobby, but the tiled floor of the ATM lobby was otherwise uncovered. In opposing defendant’s summary judgment motion, plaintiff took the position that the floor on which he slipped was wet before he stepped onto it, although it is not entirely clear from his deposition that he noticed any water on the floor before his mishap. Plaintiff offered no evidence to show how long any wet condition of the floor had existed before the accident, nor did he present evidence that the floor itself was defective in any way.* On this record — under principles established by years of case law that the majority simply ignores — defendant is entitled to summary judgment dismissing the complaint. Accordingly, I respectfully dissent.
The majority approaches the uncomplicated and undisputed facts evidenced in the record as if this case were one of first *645 impression. Nothing could be further from the truth. Over the years, New York courts have decided numerous cases presenting the very same fact pattern we see here — a slip and fall on the floor at the entrance to a public building, when the floor was rendered slippery by water or slush tracked in by pedestrians during a period of inclement weather. In such cases, contrary to the majority’s holding in this matter, the courts of this state have repeatedly held that a property owner’s general awareness that an area becomes wet as a result of inclement weather does not constitute constructive notice of the specific condition that gave rise to an accident (see e.g. Solazzo v New York City Tr. Auth., 6 NY3d 734, 735 [2005], affg 21 AD3d 735 [2005]; Asante v JPMorgan Chase & Co., 93 AD3d 429 [2012]; Rouse v Lex Real Assoc., 16 AD3d 273, 274 [2005] [“that rainwater was being tracked into the lobby does not constitute notice of a dangerous condition”]). Further — and, again, directly contradicting the majority’s present holding — the courts of this state have also repeatedly held that, at a time of inclement weather, a property owner has no duty either to continuously mop up moisture tracked onto its floors by people entering from outside or to cover its entire floor with mats (see e.g. Miller v Gimbel Bros., 262 NY 107 [1933]; Thomas v Boston Props., 76 AD3d 460, 461 [2010] [“the law imposes no obligation to take continuous remedial action to remove moisture accumulating as a result of pedestrian traffic”]; Gonzalez-Jarrin v New York City Dept. of Educ., 50 AD3d 334, 335 [2008] [property owners “were under no obligation ‘to cover the entire floor with mats and to continuously mop up all tracked-in water’ ”], quoting Garcia v Delgado Travel Agency, 4 AD3d 204 [2004]; Meza v Consolidated Edison Co. of N.Y., 50 AD3d 452 [2008]; Gibbs v Port Auth. of NY., 17 AD3d 252, 255 [2005] [property owner “did not have an obligation to provide a constant remedy to the problem of water being tracked into a building in rainy weather”]; Keum Choi v Olympia & York Water St. Co., 278 AD2d 106, 107 [2000]; Hussein v New York City Tr. Auth., 266 AD2d 146, 146-147 [1999]; Negron v St. Patrick’s Nursing Home, 248 AD2d 687 [1998]; Kovelsky v City Univ. of N.Y., 221 AD2d 234 [1995]).
Blithely ignoring the holdings of all of the foregoing cases, the majority in effect holds that defendant could only avoid liability by stationing a worker in the lobby with a mop, continuously mopping up after each person as he or she walked in, or by covering the entire floor with mats. This is simply not the law. In its determination to reach this result, the majority seemingly pretends that it is writing on a clean slate, addressing a fact pattern never before seen. In fact, New York courts have been deciding cases on similar facts for decades, and have established *646 principles to govern such cases. The majority essentially ignores this body of precedent. Tellingly, the majority does not cite a single case in which the plaintiff allegedly slipped on water that people tracked into a building (as opposed to water that leaked into a building through structural cracks).
Finally, to the extent the majority bases its result on defendant’s failure to place a warning sign in the ATM lobby, it cites no precedent authorizing the imposition of liability on a property owner for failing to warn persons entering its building during a period of “ice and slush” that a tiled or stone floor may be slippery due to tracked-in moisture — a risk that is open and obvious to any reasonable person (see Tagle v Jakob, 97 NY2d 165, 169 [2001] [“a landowner has no duty to warn of an open and obvious danger”]). In any event, plaintiff does not argue that defendant may be held liable based on the absence of a warning sign. Concur — Mazzarelli, J.P., Friedman, Catterson, Renwick and Richter, JJ.

 The majority suggests, with no basis whatsoever, that I make “allegations” to the effect that plaintiff “contenáis] that the tile floor was generally slippery.” I attribute no such contentions to plaintiff; I merely point out that the case presents no issue as to whether the floor was inherently áefective.