| |
|---|
| **Rothman v 40 W 25 LLC** |
| 2024 NY Slip Op 30461(U) |
| February 13, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 152775/2020 |
| Judge: David B. Cohen |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

**PRESENT:**  **HON. DAVID B. COHEN**

*Justice*

-----------------------------------------------------------------------------------X

SHEILA ROTHMAN,

Plaintiff,

- v -

40 W 25 LLC,THE KAUFMAN ORGANIZATION, A.B.
IMPORT EXPORT CO. D/B/A SHOWPLACE ESTATE
BUYERS,

Defendant.

-----------------------------------------------------------------------------------X

A.B. IMPORT EXPORT CO. D/B/A SHOWPLACE ESTATE
BUYERS

Plaintiff,

-against-

UNITECH DESIGN, INC. D/B/A SPACE DESIGN

Defendant.

-----------------------------------------------------------------------------------X

| | |
|---|---|
| **PART** | **58** |
| **INDEX NO.** | 152775/2020 |
| **MOTION DATE** | 03/28/2023 |
| **MOTION SEQ. NO.** | 002 |

**DECISION + ORDER ON MOTION**

Third-Party
Index No. 595157/2021

The following e-filed documents, listed by NYSCEF document number (Motion 002) 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75

were read on this motion to/for  JUDGMENT - SUMMARY .

In this personal injury action, defendant A.B. Import-Export Co. d/b/a Showplace Estate

Buyers (A.B.) moves, pursuant to CPLR 3212, for summary judgment dismissing the amended

complaint and all cross-claims asserted against it.  Plaintiff opposes.

<u>I.      FACTUAL BACKGROUND</u>

Plaintiff alleges that, on January 19, 2020, she tripped on one of the support poles of a

canopy located at 40 West 25th Street in Manhattan (Premises), and then fell, sustaining personal

[* 1]

injuries to her elbow, requiring open reduction surgery. The canopy was designed and installed by third-party defendant Unitech Design, Inc. d/b/a space Sign (Unitech). A.B. was a tenant of a portion of the building located at the Premises (Building). Plaintiff alleges that A.B. "erected, maintained and/or owned the canopy appurtenant and/or attached it to" the Premises (NYSCEF Doc No. 1).

On March 15, 2020, plaintiff commenced this action in which she alleges that, on the day of the incident, as she was stepping toward the Premises, "she was caused to trip and fell on a metal bar protruding at an angle from the [canopy] of the awning in front of the premises" (*id*.).

Defendants 40 W 25 LLC and the Kaufman Organization served an answer in which they admitted that 40 W 25 LLC owned the Premises (Owner) (NYSCEF Doc No. 2).

On January 26, 2021, plaintiff filed an amended complaint (NYSCEF Doc No. 11), and thereafter, A.B. answered the amended complaint (NYSCEF Doc No. 14), and then commenced a third-party action impleading Unitech (NYSCEF Doc No. 18), and on March 24, 2021, Unitech filed its answer (NYSCEF Doc No. 27).

During her deposition on November 29, 2021, plaintiff testified that January 19, 2020, she drove to Showplace, an antique mall located at the Premises. In the 20 years before the accident, plaintiff had been at Showplace between five to 10 occasions, during which time an awning and canopy were always located in front of Showplace. When plaintiff arrived at Showplace, she double parked one or two car lengths from the pertinent canopy waiting for a parking spot, and she observed that scaffolding covered the whole front of the building.

Plaintiff parked, got out of the vehicle, and started walking towards the back of her vehicle towards an opening on the sidewalk that she saw between the canopy and the scaffolding. When parked, plaintiff's vehicle blocked the left pole of the canopy (as one looks at the building).

[* 2]

Specifically, the area between plaintiff's front and back car doors was located parallel to the pole on the left.

When plaintiff tried to step onto the sidewalk, she tripped with her right foot on a "metal bar that came from the canopy and it went at an angle low on the canopy" (*id*. at 40, 43). Shown several pictures, she identified the metal bar as the bar on an angle located to the left side of the canopy; the pictures also show that the canopy extended out over the sidewalk in front of the Building (NYSCEF Doc Nos. 70-72). This was the first time that she observed a scaffold or shed outside Showplace.

On July 15, 2022, A.B.'s president testified that it obtained permission from the Building's management company to have a canopy installed for advertising purposes, and it retained Unitech to install a canopy in 2005.

The president was unaware of any complaints or other accidents involving the canopy, nor did he receive any violations regarding it. A.B. did not request that a scaffold be placed at the Premises.

On May 17, 2022, Unitech's witness testified that Unitech creates, designs, and installs store signs and awnings. After being retained by a customer, Unitech would go to the pertinent location and take measurements and pictures, and issue an invoice. Thereafter, Unitech designed the requested sign and/or awning. Before installing an awning, Unitech applied for a permit. Once installed, Unitech had no responsibility for maintaining an awning.

Unitech designed and installed the canopy and awning at issue. The metal poles installed at an angle are support poles, placed to prevent the awning from shaking.

On May 17, 2022, the Building's superintendent appeared for a deposition on behalf of defendants Owner and The Kaufman Organization. In January 2020, the commercial Building had

[* 3]

nine or 10 tenants, including A.B. There was one entrance to the commercial space leased by A.B., one entrance to the main lobby (which provided access to the rest of the building), and a freight entrance.

Before 2022, a canopy existed in front of A.B.'s entrance, for which A.B. was responsible for maintaining, and no changes had been made to it since at least 2011. However, the canopy was removed at the end of 2020 or the beginning of 2021. A.B. was also responsible for maintaining the sidewalk area in front of its leased space.

In January of 2020, scaffolding was erected at Showplace, and a portion of it was used as safety prevention related to repairs being made to neighboring buildings, which had to extend their scaffolding 20 feet to adjacent buildings. Another portion was placed on Owner's behalf for the performance of work at the Building.

Notice of a sidewalk violation would be given to Showplace, and the Superintendent did not receive any complaints regarding the canopy or any sidewalk violations before plaintiff's accident.

On May 29, 1994, Owner and A.B. entered into a lease agreement for the store and basement located at the Premises. Pursuant to article 4 of the Lease, Owner was responsible for maintenance and repair of "the exterior of and all public portions of the building."

As pertinent here, on June 1, 2005, the parties entered into a Second Modification, Amendment and Extension of the Lease, which extended the term of the Lease to May 31, 2020, and Owner permitted A.B. to install a canopy on the exterior of the building, subject to Owner's reasonable approval of the design.

On October 27, 2005, permit no. M01-2005400-111 was issued, allowing Unitech to open the sidewalk adjacent to the Building for the purposes of erecting a canopy. On December 23,

2005, canopy permit number M07-2995357-007 was issued to Showplace, allowing a canopy to be maintained at the Building.

Photographs of the canopy, which advertised the "Showplace Antique Center" in large white letters, demonstrate that it extended from the building, across the sidewalk, and ended at the street. The photographs also show that the canopy included not only vertical poles, but a pole on each side that attached to the vertical pole at an angle, and attached to the sidewalk. One picture demonstrates the addition of a scaffold which had metal poles the same color and size as those supporting the canopy.

Wyndred C. Sibley Jr., a licensed professional engineer in the State of New York, employed by Hudson International Group, Consultants and Engineers, provided his expert opinion on behalf of A.B. After reviewing photographs of the canopy, Sibley determined that the canopy was installed with poles at each corner along the curb, with each pole buttressed by an angled support pole fastening less than midway up, then angled down and fastened to the sidewalk. The canopy maintenance permit indicates that the canopy was constructed in accordance with the design criteria and design plans approved by the New York City Department of Transportation.

Based on his review of the pertinent documents, Sibley opined that the canopy support poles were in good condition, well-maintained, and fully visible. Moreover, the sidewalk canopy, canopy poles, and canopy support poles were deemed safe and in compliance with the design by the NYC Department of Transportation at the time of the construction.

Harry Toung, plaintiff's expert and a licensed architect with 40 years of experience, opined that "based upon a careful review of the various documents and transcripts presented, that the subject canopy support pole, as further indicated herein, presented a dangerous and unreasonable

risk to the public in general and the plaintiff in particular. I also opine that the pole was the proximate cause of the plaintiff's significant injuries in this matter."

Although the relevant building code provides that canopies must be designed with materials that can withstand wind, there is no requirement that a canopy have an angled support pole, and, therefore, there is nothing in the building code that "requires the angled canopy pole to exist." Accordingly, "[t]he pole that the plaintiff tripped over had no legal requirement to be there in the first place," and "[i]ndeed, stronger materials could be used to construct a canopy, making the angled pole a dangerous but unnecessary afterthought."

As to plaintiff's testimony that she did not see the support pole before she tripped over it, the expert opined that "she would not have seen the lowly placed diagonal bracing and that it was entirely foreseeable that she would trip over it with the shin of her right leg." The angled support pole is not within the normal "cone of vision" of the average pedestrian, "and thus [plaintiff] would not have been able to see the impediment that she was about to trip over," which constituted a clear danger to pedestrians.

Moreover, the expert stated that "the presence of the support for the adjacent sidewalk shed only makes this dangerous condition even worse," and that "[t]ogether with the vertical support of the canopy, this condition represents a distraction that seems to suggest that one can walk through the illusory clear space between posts in order to get to the destination." Also, "other views suggest to the pedestrian that passage in a particular direction i[s] not feasible given the confusing crossing of the shed poles, all of them the same color, size and shape as the canopy poles."

## II. CONCLUSIONS OF LAW

"'[T]he proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the

absence of any material issues of fact'" (*Ayotte v Gervasio*, 81 NY2d 1062, 1063 [1993] [citation omitted]; *Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]). The burden is a heavy one: the facts must be viewed in the light most favorable to the non-moving party and every available inference must be drawn in the non-moving party's favor (*Sherman v New York State Thruway Auth.*, 27 NY3d 1019, 1021 [2016]). "Failure to make such showing requires denial of the motion, regardless of the sufficiency of the opposing papers" (*Winegrad*, 64 NY2d at 853; *see also Lesocovich v 180 Madison Ave. Corp.*, 81 NY2d 982 [1993]).

The party opposing summary judgment has the burden of presenting evidentiary facts sufficient to raise triable issues of fact (*Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]; *CitiFinancial Co. [DE] v McKinney*, 27 AD3d 224, 226 [1st Dept 2006]). Summary judgment may be granted only when it is clear that no triable issues of fact exist (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]), and "is inappropriate in any case where there are material issues of fact in dispute or where more than one conclusion may be drawn from the established facts" (*Friends of Thayer Lake LLC v Brown*, 27 NY3d 1039, 1043 [2016]).

To establish a prima facie claim for negligence under New York law, "a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom" (*Solomon v City of New York*, 66 NY2d 1026, 1027 [1985]; *accord J.E. v Beth Israel Hosp.*, 295 AD2d 281, 283 [1st Dept 2002]; *Wayburn v Madison Land Ltd. Partnership*, 282 AD2d 301, 302 [1st Dept 2001]). "Because a finding of negligence must be based on the breach of a duty, a threshold question in torts cases is whether the alleged tortfeasor owed a duty of care to the injured party" (*Espinal v Melville Snow Contrs.*, 98 NY2d 136, 138 [2002]). Absent a duty of care to the person injured, a party cannot be held liable in negligence (*Palsgraf v Long Is. R.R. Co.*, 248 NY 339, 341-342 [1928]).

[* 7]

"Liability for a dangerous condition on property may only be predicated upon occupancy, ownership, control or special use of such premises" (*Gibbs v Port Auth. of N.Y.*, 17 AD3d 252, 254 [1st Dept 2005]; *accord Adriana G. v Kipp Wash. Hgts. Middle Sch.*, 165 AD3d 469, 469 [1st Dept 2018]). Absent evidence of ownership, occupancy, control or special use, "a party cannot be held liable for injury caused by the defective or dangerous condition of the property" (*see Balsam v Delma Eng'g Corp.*, 139 AD2d 292, 297 [1st Dept 1988]; *accord Ruggiero v City Sch. Dist. of New Rochelle*, 109 AD3d 894, 895 [2d Dept 2013]).

As to tenants, "'[a]s a general rule, a ... tenant will not be liable to a pedestrian injured by a defect in a public sidewalk abutting its premises'" (*Padarat v New York City Tr. Auth*, 175 AD3d 700, 703 [2d Dept 2019] [citation omitted]). A tenant will only be liable if it either (1) affirmatively caused or created the defect that caused plaintiff to trip, or (2) put the subject sidewalk to a "special use" for its own benefit, thus assuming a responsibility to maintain the part used in reasonably safe condition (*see Heredia v C.S. Realty Assoc. LLC*, 217 AD3d 496, 498 [1st Dept 2023]; *Kellogg v All Sts. Hous. Dev. Fund Co.*, 146 AD3d 615, 617 [1st Dept 2017]; *Collado v Cruz*, 81 AD3d 542, 542 [1st Dept 2011]).

"Special use cases usually involve the installation of some object in the sidewalk or street or some variance in the construction thereof" (*Tyree v Seneca Ctr.-Home Attendant Program, Inc.*, 260 AD2d 297, 297 [1st Dept 1999] [citation and quotation marks omitted]; *see also Gianellis v BorgWarner Morse TEC Inc.*, 167 AD3d 1185, 1186 [3d Dept 2018] [internal quotation marks and citations omitted] [special use will be found "where there is a modification to the public sidewalk, such as the installation of a driveway, or a variance of the sidewalk to allow for ingress and egress, that was constructed in a special manner for the benefit of the abutting" landowner or occupier]).

"Inherent in the doctrine of special use is the principle that the duty to repair and maintain the special structure or instrumentality is imposed upon the adjoining landowner or occupier because the appurtenance was installed at their behest or for their benefit" (*Kaufman v Silver*, 90 NY2d 204, 207 [1997]). "Imposition of the duty to repair or maintain a use located on adjacent property is necessarily premised, however, on the existence of the abutting land occupier's access to and ability to exercise control over the special structure or installation" (*id.*).

Thus, if an abutting landowner or occupier has "'express or implied access to, and control of'" a sidewalk appurtenance from which he receives a "special use," then he is responsible for maintaining the appurtenance, and is liable for a pedestrian's injuries caused by it (*Petty v Dumont*, 77 AD3d 466, 468 [1st Dept 2010] [citation omitted]; *see also Breland v Bayridge Air Rights, Inc.*, 65 AD3d 559, 560 [2d Dept 2009]).

Although A.B. admittedly had the canopy installed at its behest and for its own benefit, it argues that it cannot be liable for plaintiff's accident because it did not occupy or control the area where the accident occurred. A.B. relies on article 4 of the Lease, which required Owner to maintain and repair the exterior and public portion of the building.

However, even if A.B. established, prima facie, that it did not occupy or control the sidewalk area in front of its leased premises, there are issues of fact as to whether A.B. had access to and the ability to exercise control over the canopy, given Owner's testimony that A.B. was responsible for maintaining the canopy and the sidewalk area in front of its space (*see e.g. Larosa v Corner Locations, II, L.P.*, 169 AD3d 512, 513 [1st Dept 2019] [where plaintiff was injured when she tripped and fell over the edge of a metal cellar door located on the public sidewalk in front of premises leased by defendant, "(t)he (lower) court properly denied [defendant's] motion for

summary judgment because there are issues of fact as to whether it made special use of the cellar door in the sidewalk for its business and failed to maintain it in good repair"]).

A.B. also argues that the canopy and supporting poles were an open and obvious condition, observing that plaintiff had seen the canopy the five to 10 times she had previously gone to Showplace.

Under New York law, a landowner "has no duty to warn of an open and obvious danger" (*Tagle v Jakob*, 97 NY2d 165, 169 [2001]). However, "whether a dangerous or defective condition exists on the property of another so as to create liability depends on the peculiar facts and circumstances of each case and is generally a question of fact for the jury" (*Trincere v County of Suffolk*, 90 NY2d 976, 977 [1997] [citation and quotation marks omitted]; *accord Hutchinson v Sheridan Hill House Corp.*, 26 NY3d 66, 77-78 [2015]; *Carasco v Schlesinger*, 222 AD3d 476 [1st Dept 2023]).

While plaintiff had previously seen the canopy, the evidence indicates that the scaffolding had only recently been erected, and the submitted photographs do not demonstrate, as a matter of law, that the angled support pole "was plainly observable, and posed no danger to a person making reasonable use of [his or] her senses" (*see Castro v Village Super Mkt. of NY, LLC*, 211 AD3d 506, 506 [1st Dept 2022]; *Moss v Westside Supermarket LLC*, 198 AD3d 461, 462 [1st Dept 2021]).

Moreover, plaintiff's expert opined that the combination of the canopy's angled support poles and the scaffold was dangerous and/or defective, in that it created a confusing crisscrossing of metal bars, making it deceptively hazardous to the average pedestrian, and that the angled "support" on the canopy was designed improperly because it is not within the "cone of vision" of the average pedestrian. While A.B.'s expert comes to the opposite conclusion, "'[c]onflicting expert affidavits raise issues of fact and credibility that cannot be resolved on a motion for

summary judgment'" (*Carter v HP Lafayette Boynton Hous. Dev. Fund co., Inc.*, 210 AD3d 580, 581 [1st Dept 2022] [citation omitted]).

Therefore, issues of fact exist as to whether the alleged hazard was open and obvious, and not inherently dangerous, precluding summary judgment in A.B.'s favor (*see Simo v City of New York*, 205 AD3d 508, 509 [1st Dept 2022]; *Widdecombe v Consolidated Edison Co. of N.Y.*, 211 AD3d 450, 450 [1st Dept 2022]).

In light of this result, there is no basis upon which to dismiss any cross-claims against A.B., which, in any event, A.B. does not address in its moving papers.

Accordingly, it is hereby

ORDERED, the motion for summary judgment by defendant A.B. Import-Export Co. d/b/a Showplace Estate Buyers is denied.

<table>
<tr><td>__2/13/2024__<br>**DATE**</td><td></td><td></td><td colspan="2"></td><td>**DAVID B. COHEN, J.S.C.**</td></tr>
</table>

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|---|
| | | GRANTED | X DENIED | | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |