(June 22, 1999)

■ SAMUEL VASQUEZ et al., Appellants-Respondents, v ANGEL FIGUEROA, Respondent-Appellant, and CITY OF NEW YORK, Respondent. [694 NYS2d 6] —Order, Supreme Court, Bronx County (Lucindo Suarez, J.), entered June 12, 1998, which granted a motion by defendant City of New York to set aside the verdict, dismissed the complaint against the City and directed that a new trial be held on damages, unless within 30 days of notice of entry of the order, plaintiffs and defendant Angel Figueroa stipulated to certain reduced damage awards, unanimously modified, on the law and the facts, the complaint reinstated as against defendant City, and the matter remanded for a new trial, and otherwise affirmed, without costs.

In this action, plaintiffs seek to recover damages for injuries suffered by plaintiff Samuel Vasquez in an automobile accident that occurred in the early morning hours of November 9, 1986 while he was a passenger in a car operated by defendant Angel Figueroa. The accident occurred on the curved exit ramp from the Arthur Sheridan Expressway leading to the Cross Bronx Expressway, where Figueroa lost control of his car, which then collided with, and vaulted over, a concrete barrier. Plaintiff, who was propelled out of the car, sustained a severe brain injury and will require lifetime institutionalization. Figueroa also sustained a head injury and resultant memory loss. As a result, the liability case rested solely on circumstantial evidence and expert testimony.

Plaintiffs' claim against the City was based on its allegedly negligent failure to provide adequate signs warning drivers to slow down for the curve and negligent maintenance of a concrete "Jersey barrier" by the side of the road, which, plaintiff claimed, was damaged in a way that caused the car to vault over it. Plaintiffs' claim against Figueroa was based on evidence that Figueroa was speeding. Following a bifurcated trial, the jury determined that the City was 90% liable and Figueroa was 10% liable, and it awarded total damages of $24.19 million.

The trial court granted the City's motion for judgment notwithstanding the verdict and dismissed the complaint against the City on the ground that plaintiffs failed to present evidence supporting a finding of notice and proximate cause. The court also granted the post-trial motion of defendant Figueroa by directing a new trial on damages unless plaintiffs stipulated to reduce past pain and suffering damages from $2,800,000 to $1,000,000, to reduce future pain and suffering damages from $8,500,000 to $3,000,000 and to reduce loss of services damages from $2,000,000 to $600,000.

In determining a motion to set aside a verdict and to direct judgment in favor of a party entitled to judgment as a matter of law pursuant to CPLR 4404 (a), the court's role is not to determine whether the jury erred in weighing the evidence presented, but whether there is any valid line of reasoning and permissible inferences which could possibly lead rational people to the conclusion reached by the jury on the basis of the evidence presented at trial (*Cohen v Hallmark Cards*, 45 NY2d 493; *Smolinsky v 46 Rampasture Owners*, 230 AD2d 620).

Moreover, as plaintiffs and defendant Figueroa properly note, due to their inability to recount what occurred at the time of the accident, they were only required to show facts and conditions from which the negligence of the City and the causation of the accident by that negligence could be reasonably inferred (*see, Wragge v Lizza Asphalt Constr. Co.*, 17 NY2d 313, 320; *Noseworthy v City of New York*, 298 NY 76).

Applying these standards to the proof presented at trial, we find that the trial court erred in granting the City judgment notwithstanding the verdict in plaintiffs' favor.

Initially, we note that the court erred in setting aside the verdict based on the defense of governmental immunity (*see, e.g., Friedman v State of New York*, 67 NY2d 271; *Weiss v Fote*, 7 NY2d 579), since the City never raised this defense in its answer and it was not submitted to the jury. In any case, this defense is not applicable, since it applies to claims based on

highway planning decisions (*Friedman v State of New York, supra*, at 284; *Weiss v Fote, supra*), not to claims such as those set forth by plaintiffs, which were based on negligent maintenance (*see, Gregorio v City of New York*, 246 AD2d 275, *lv granted*, 255 AD2d 1018).

Moreover, contrary to the trial court, we find there was a line of reasoning to support the jury's verdict, and that it was error to grant the City judgment as a matter of law. As properly found by the trial court, plaintiffs set forth evidence from which it could be inferred that two ground-mounted speed limit signs that had been installed by the State as part of the original design and had been accepted for maintenance by the City were no longer present on the date of the accident. This evidence included the "Sign Text Data Sheet," which indicated that a ground-mounted advisory and speed sign had been added to the right side of the single lane to complement the same type of sign on the left side of the lane, as well as photographic evidence of the site demonstrating that these signs had been missing from the site for at least three years at the time of the accident. The court noted, specifically, that the evidence was sufficient "to conclude that the City had constructive notice that these two ground-mounted signs were missing", although, as was also noted by the court, there was no dispute that the overhead 35 miles per hour sign and the right turn/20 miles per hour signs that were present at the site conformed to and exceeded the requirements of the State Manual for Uniform Traffic Control devices (*see, e.g., Patti v State of New York*, 217 AD2d 882).

The court concluded that, despite the fact that these signs were missing, there was no evidence from which the jury could find the City liable. This was based on the court's determination that, because other signs were in place warning of the speed reduction, and because the existing signage was not shown to be beneath any applicable standards, there was no evidence to demonstrate a causal link between the fact that the ground-mounted signs were missing and the accident. The court's supposition was that if the driver did not slow down for the other signs, he would not have slowed down for these.

We find that the conclusion drawn by the court overlooks the significance of another fact concerning which plaintiffs offered substantial evidence and which the court accepted as proven, i.e., that the Jersey barriers on the curve where the accident took place were in a very battered condition. There were not only numerous breaks in the concrete but, on the curve, the paint marking the barrier with black and white stripes was

almost completely worn away. This evidence, by supporting the inference that there had been numerous collisions with the barrier by vehicles proceeding too fast through the curve, also supports the inference that, under the particular circumstances present, the existing signage was not sufficient to warn motorists in time to reduce their speed. Indeed, the State had apparently drawn this very conclusion by requiring the two ground-mounted signs in the original plan, even though they may have been in excess of what applicable standards required.

Moreover, we find that there was sufficient evidence to support a finding that the City had actual or constructive notice that the absence of these signs created a dangerous condition that contributed to the instant accident. To constitute constructive notice of a dangerous condition, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit the City to discover and remedy it (*see, Gordon v American Museum of Natural History*, 67 NY2d 836, 837). Here, in light of the battered, and broken, nature of the barriers, clearly supporting an inference of numerous, albeit not necessarily serious, collisions over a long period of time, the jury was entitled to conclude that the City was on notice of a dangerous condition. We reject the court's determination that "[m]arks on a barrier do not necessarily equate with a dangerous condition where the purpose of a barrier is to keep a vehicle on the roadway that is not obeying or paying attention to the rules of the road." While a Jersey barrier may properly be installed to deal with the unusual emergency, the fact that vehicles are regularly colliding with it and being forced back onto the road constitutes notice to the entity responsible for maintaining the highway that, for whatever reason, too many vehicles are failing to properly and safely negotiate the curve. Moreover, the City is not necessarily relieved of responsibility under this theory merely because the drivers who approach the curve too fast in spite of the overhead signs were themselves negligent. The City's negligence can still be a concurring cause along with a driver's negligence where it increased the likelihood of an accident (*see, Humphrey v State of New York*, 60 NY2d 742).

Thus, it was not irrational for a jury to conclude that the fact that so many vehicles were regularly exceeding the speed limit and therefore running into the barrier indicated not only that there was insufficient warning of the speed limitations, but that there was notice to the City that, in light of so many minor accidents at this spot, a major accident was probable.

Under these circumstances, the fact that the City's own rec-

ords showed only five prior accidents at the site, only one of which involved a car vaulting over the barrier, is not in and of itself sufficient to warrant judgment as a matter of law in the City's favor (*see, Gregorio v City of New York, supra*). We note in this context the additional factor that the jury may well have declined to accept the City's accident records at face value, particularly where it appears that the instant accident did not subsequently appear in the City's records.

While, for these reasons, we find that the court erred in granting judgment, we find that the proper remedy is not the reinstatement of the verdict but a new trial, since we find that the verdict was against the weight of the evidence. In particular, we find the apportionment of 90% of the liability to the City to be insupportable, where the evidence shows that the speed of the automobile demonstrated significant negligence on Figueroa's part even taking into account the arguably inadequate warnings.

Regarding plaintiffs' argument that the barrier was negligently maintained and that such negligence contributed to the subject injuries, we agree with the trial court that plaintiffs, at most, showed only that the evidence did not absolutely rule out the possibility that the City's negligence caused the plaintiff's injuries. This is not enough to sustain a verdict on this theory. There was testimony showing that the top of the Jersey barrier in the area of the accident had a number of broken areas creating notches in the upper surface of the barrier, that there was paint near one of these notches that may have been the same color as Figueroa's car,* that 90-foot. skid marks led up to that notch, that Figueroa's car had landed on the other side of the barrier and that, according to the pictures taken of the car, it appeared that one of the tires was embedded with white concrete similar to that of the barrier. Furthermore, there was evidence demonstrating that the very purpose of the design and shape of the barrier was to prevent a car coming into contact with it from vaulting over it by directing it back onto the road. It is true that this evidence did not rule out plaintiff's expert's theory that one of the tires of Figueroa's car hit the notch at the top of the barrier and was caught and that, as a result, the car vaulted over the barrier rather than returning to the road, as it would have done had the notch not been there. However, there was no evidence that this conclusion was any more likely than that Figueroa's car caused the notch in the barrier when it collided with it. Under these circumstances,

---

* Figueroa's car was described variously as blue and green. The paint mark was described as blue-green.

the testimony of plaintiff's expert that the notch actually caused the car to vault over the barrier is essentially based on speculation and may not support a reasonable inference that the City was liable.

As to damages, we find that the trial court's conditional reduction of the relevant damage awards was proper in light of the evidence that the jury awards deviated materially from what is reasonable compensation under these circumstances (*see*, CPLR 5501 [c]).

For all these reasons, we find that the court erred in directing a verdict in the City's favor and that the matter should be remanded for a new trial on the City's liability based on the allegedly negligent maintenance of signs. We have examined the parties' remaining arguments for affirmative appellate relief, and find that they are unavailing. Concur—Ellerin, P. J., Nardelli, Tom and Andrias, JJ.

