■ Robert Scott Petty et al., Appellants, v Arnold Dumont et al., Respondents. [910 NYS2d 46]—

Order, Supreme Court, New York County (Saliann Scarpulla, J.), entered December 21, 2009, which denied plaintiffs' motion for partial summary judgment on the issue of liability for personal injuries and on the threshold issue of "serious injury" under Insurance Law § 5102 (d), modified, on the law, the motion granted on liability against all defendants, plaintiff Amaya is granted summary judgment against defendant Dumont on the issue of serious injury, and otherwise affirmed, without costs.

The motion court erred in finding that the existence of factual issues of comparative fault among the defendants precluded it from awarding the blameless plaintiffs partial summary judgment on the issue of liability, as "the right of an innocent passenger to summary judgment is not in any way restricted by potential issues of comparative negligence" among defendants (*Johnson v Phillips*, 261 AD2d 269, 272 [1999]).

Here, defendant Dumont's cab collided with a line of at least five concrete barriers placed end to end in the middle of the left-most of West 66th Street's traffic lanes, partitioning off the left side parking lane into a private entry lane, controlled by Con Ed, leading into a Con Ed facility. The accident occurred at 7:20 P.M. on October 16, 2005; it was dark and drizzling. Although plaintiffs stated that Dumont was driving erratically and too fast, Dumont testified that he was traveling at no more than 15 mph at the time of the collision. Dumont stated that although he had a clear and unobstructed line of sight in the direction of the barrier, he never saw the barrier prior to impact. Under these circumstances, there is no excuse for the collision, and Dumont's negligence is established as a matter of law (*see DeAngelis v Kirschner*, 171 AD2d 593 [1991]).

As to the municipal defendants, it is undisputed that they had installed the concrete barrier, but they never put up warning signs or changed the traffic lanes to divert traffic around it. Although orange barrels were initially placed in front of the

barriers, they disappeared and the municipal defendants never replaced them. Indeed, their witness admitted that the barrier, as configured, was a "hazard." They contend nonetheless that Dumont's negligence in driving into the barrier constituted a "superseding cause of the accident."

This argument is unavailing. While issues of proximate cause are generally to be resolved by the factfinder (*see Derdiarian v Felix Contr. Corp.*, 51 NY2d 308, 315 [1980]), a municipality's negligence in failing to provide adequate warning of a known roadway hazard has been held to be a concurrent cause, not superseded by the negligence of a careless driver (*see Humphrey v State of New York*, 60 NY2d 742, 744 [1983]). Indeed, it is readily foreseeable that a careless driver might crash into an unmarked concrete barrier placed in the middle of the street. Under these circumstances, the municipal defendants' negligence "increased the likelihood of an accident," and as such was a concurrent cause of this accident, not superseded by Dumont's carelessness (*Vasquez v Figueroa*, 262 AD2d 179, 182 [1999]).

As to Con Ed, although a private landowner generally owes no duty to maintain a public roadway adjacent to its land (*see Spangel v City of New York*, 285 AD2d 425 [2001]), an exception to this rule is found in the "special use" doctrine, which applies when, among other things, a structure erected on public land has the effect of causing an adjoining private property to derive a special benefit from that land (*see Kaufman v Silver*, 90 NY2d 204 [1997]; *Weiskopf v City of New York*, 5 AD3d 202 [2004]). In such case, "the person obtaining the benefit is 'required to maintain' the used property in a reasonably safe condition to avoid injury to others" (*Kaufman*, 90 NY2d at 207). The private landowner thus bears a "duty to repair and maintain the special structure or instrumentality" creating the benefit, provided that the landowner has "express or implied access to, and control of" the instrumentality giving rise to the duty (*id.* at 207, 208). This is so regardless of whether the private landowner installed the structure (*see Weiskopf*, 5 AD3d at 203).

Here, the municipal defendants installed the barriers as an antiterrorist measure after September 11, 2001, thus expanding the safety perimeter around the Con Ed facility. Con Ed argues, and the dissent agrees, that the barriers did not constitute a special use because they were placed there for the benefit of the public—to protect an important utility facility—rather than for the benefit of Con Ed per se. This argument lacks merit. What the dissent overlooks is that over the years, Con Ed did derive a "special benefit" from the barriers by effectively converting the

previously public parking lane into a private entry lane for the Con Ed facility, i.e., under Con Ed's control and its exclusive use. In *Infante v City of New York* (258 AD2d 333, 334 [1999]), a gas station used a portion of a public sidewalk as an entrance to its premises and occasionally for parking, we held that "[t]he use of the public sidewalk as a driveway and parking lot for the gas station . . . was a special use, and there was sufficient evidence to establish that such special use caused the defect in the sidewalk that caused plaintiff to fall." Here, Con Ed not only had exclusive access and control over the area between the barriers and the curb, as evidenced by its addition of a swing gate permitting access only to Con Ed employees and others having business with Con Ed in that area, but also over the barriers themselves. Con Ed's own deposition witnesses testified that any party, including the City, who needed to move the barriers for any reason, including cleaning, paving, etc. had to first consult with Con Ed to determine what impact it would have on the facility's perimeter for security purposes. In fact, Con Ed's witness testified that the City's plan to perform paving work at one point "was not acceptable because the perimeter protection was not there," clearly indicating that Con Ed's approval for any movement of the barriers was required.

*Kaufman v Silver* (*supra*) relied on by the dissent is not to the contrary. There, a handicapped ramp upon which plaintiff fell was located on adjoining private property. The Court of Appeals stated: "Inherent in the doctrine of special use is the principle that the duty to repair and maintain the special structure or instrumentality is imposed upon the adjoining landowner or occupier because the appurtenance was installed at their behest *or for their benefit*" (90 NY2d at 207 [emphasis added]). The dissent correctly points out that Con Ed did not request the barriers. But once those barriers were installed, Con Ed, by exercising complete control over them (or at least much greater control than the municipal defendants on whose property those barriers are located), certainly obtained a not insignificant benefit, including an additional layer of security (at no cost to it) as well as a private access way to its facility.

*Kaufman* recognized the requirement of the element of control by further holding that "[i]mposition of the duty to repair or maintain a use located on adjacent property is necessarily premised, however, upon the existence of the abutting land occupier's access to and ability to exercise control over the special use structure or installation" (*id.* at 208). Notably, in order to be held liable under a special use theory, even partial control of the instrumentality by the special user is sufficient to

impose liability (*see Olivia v Gouze*, 285 App Div 762, 766 [1955], *affd* 1 NY2d 811 [1956]). There is no question here that Con Ed exercised sufficient control over those barriers to meet that requirement for a special use.

Significantly, the *Kaufman* court made the observation that "[i]n contrast to the matter before us, when the special use doctrine is invoked against owners or occupiers of land abutting *public* streets or sidewalks, the requirement of access and control, although significant, poses less of a liability hurdle simply by virtue of the adjoining landowner's or occupier's freedom of access, along with the general public, to that portion of the property so used" (90 NY2d at 208-209).

As a result, Con Ed meets the "special use" doctrine exception and is liable along with the municipal defendants (*see D'Ambrosio v City of New York*, 55 NY2d 454, 463 [1982]; *Infante v City of New York*, 258 AD2d 333 [1999], *supra*).

Plaintiff Petty has not met his burden of submitting sufficient admissible evidence to warrant summary judgment on his claim that the accident caused the fracture of four teeth (*see generally Zecca v Riccardelli*, 293 AD2d 31 [2002]). Nor does the scar under his chin constitute a "significant disfigurement" and thus a "serious injury," as a matter of law. Such determination must be made by a factfinder at trial. Amaya, on the other hand, has demonstrated that the accident caused his nasal fracture. As a matter of law, he meets the threshold burden of showing "serious injury" under section 5102 (d). Concur—Tom, J.P., Mazzarelli, Sweeny, JJ.

Freedman and Abdus-Salaam, JJ., dissent in a memorandum by Abdus-Salaam, J., as follows: I agree with the majority that plaintiff's motion for partial summary judgment on the issue of liability should have been granted against defendant Dumont and the City defendants. However, I do not believe the special use doctrine applies here to impose a duty on Con Edison to maintain the City street in a reasonably safe condition. As was explained by the Court of Appeals in *Kaufman v Silver* (90 NY2d 204, 207 [1997]), "Inherent in the doctrine of special use is the principle that the duty to repair and maintain the special structure or instrumentality is imposed upon the adjoining landowner or occupier because the appurtenance was installed at their behest or for their benefit." There is no evidence, or any claim by plaintiffs, that Con Edison requested placement of the barrier in front of its facility for its accommodation. Rather, the City made the decision, after the September 11th attack, to install the barrier to protect Con Edison's Control Center, which monitors the delivery of power and its operation in all five

boroughs of the City. The barriers were for the benefit of the citizens of New York City, not for the exclusive benefit of Con Edison, and any incidental benefit that Con Edison may have gained from the barrier creating an essentially private entry lane to the facility where there had previously been a public parking lane is not sufficient to constitute a special use (*see e.g. Guadagno v City of Niagara Falls*, 38 AD3d 1310 [2007] [defendant's conduct in driving across the portion of the sidewalk that crosses her driveway was not a special use of the sidewalk]; *Montalvo v Heege*, 301 AD2d 427 [2003] [existence of a single utility line to defendant's house from utility pole in front of house does not alone support a finding of a special use of sidewalk where pole was located]; *Roselli v City of New York*, 201 AD2d 417, 418 [1994] [metal sidewalk grate covering a transformer vault that provided electrical service to the street, including defendant's premises, did not create a special use of sidewalk where the vault and grate "were clearly not installed or maintained exclusively for the accommodation of the owner of the abutting premises"]).

This Court noted in *Balsam v Delma Eng'g Corp.* (139 AD2d 292, 300 [1988], *lv dismissed and denied* 73 NY2d 783 [1988]) that "the question of imposition of a duty is one of policy and common sense, not technicalities." Under these circumstances, where there is no claim that the barrier was installed at the behest or for the benefit of Con Edison, and it is evident that the City made the decision to install it to protect the Energy Control Center from a terrorist attack, the special use doctrine is not applicable. Accordingly, Con Edison had no duty to maintain the street in a reasonably safe condition.