OPINION OF THE COURT
Michael D. Stallman, J.
In this personal injury action, defendant City of New York moves for summary judgment dismissing the plaintiff’s complaint as against it (motion sequence No. 003). Defendants Heron Real Estate Corp., BP America, Inc., and Accede, Inc. (collectively, the property owners) separately move for summary judgment dismissing the action as against them (motion sequence No. 002).
Background
Plaintiff alleges that, on June 10, 2008, upon alighting from a bus through the rear doors, she stepped onto and fell on a cracked area of sidewalk abutting a gas station owned by de *316 fendants Heron and BP and operated by defendant Accede, on the north side of East 125th Street between Second and Third Avenues, in Manhattan.
Plaintiff testified,
“There was a flow of passengers getting off in front of me and behind me. I grabbed onto the right handrail and dropped my bag with my left hand, and then very shortly thereafter stepped on the left foot — stepped down onto the cracked cement with my left foot.
“Continue?
“Q. Yes, please. . . .
“Q. [W]hat happened next?
“A. My foot twisted out, and I collapsed onto the pavement.” (Breheny affirmation, exhibit G [Bed-nark EBT] at 28-29.)
Plaintiff, in her affidavit, provided photographs taken by her on June 15, 2008, five days after the accident, showing the appearance of the sidewalk where she allegedly fell. (Heilman affirmation, exhibit A [Bednark aff] ¶¶ 3-6.) Plaintiff also measured the distance from where she allegedly fell to the nearest bus stop pole. (Id. ¶¶ 7-8.) According to plaintiff, the accident site was approximately 55 feet away from a bus stop pole indicating where buses should pull up to that stop, and indicating a no stopping zone for vehicles (id. ¶ 8). Plaintiff also reviewed a 2003 Big Apple Map showing East 125th Street between Second and Third Avenues which had notations indicating an obstruction protruding from the sidewalk; she noted the place of her alleged fall on the map. (Id. ¶ 13; see also Heilman affirmation, exhibit H [Big Apple Map].)
Discussion
The standards for summary judgment are well settled.
“On a motion for summary judgment, facts must be viewed in the light most favorable to the non-moving party. Summary judgment is a drastic remedy, to be granted only where the moving party has tender [ed] sufficient evidence to demonstrate the absence of any material issues of fact and then only if, upon the moving party’s meeting of this burden, the non-moving party fails to establish the existence of material issues of fact which require a trial of the action. The moving party’s [f]ailure to make [a] *317 prima facie showing [of entitlement to summary judgment] requires a denial of the motion, regardless of the sufficiency of the opposing papers.” (Vega v Restani Constr. Corp., 18 NY3d 499, 503 [2012] [citations, internal quotation marks and emphasis omitted].)
The City argues that summary judgment should be granted in its favor because, under Administrative Code of the City of New York § 7-210, the owners of the abutting property, not the City, had a duty to maintain the sidewalk in a reasonably safe condition. The property owners contend that summary judgment should be granted in their favor because of their view that the sidewalk that abutting property owners must maintain under section 7-210 of the Administrative Code does not include bus stops. Both the City and the property owners also argue that they are entitled to summary judgment because they neither caused or created the alleged sidewalk defect nor had any prior notice of the alleged sidewalk defect.
L
Defendants Heron and BP admitted in their answer that BP leased from Heron a gas station located at 255 East 125th Street also known as 2449 2nd Avenue in Manhattan. (Heilman affirmation, exhibit I [answer] at 1.) Mohammed Shah Alam, the owner and president of defendant Accede, testified at his deposition that he leased the gas station at 255 East 125th Street from BP beginning in May 2006. (Breheny affirmation, exhibit M [Alam EBT] at 15, 19-21.) Therefore, it appears undisputed that the accident site abuts the property of these three entities.
The property owners contend that they did not have a duty under Administrative Code § 7-210 to maintain the area of the sidewalk where plaintiff allegedly tripped and fell, citing Vucetovic v Epsom Downs, Inc. (10 NY3d 517 [2008]) and Garcia-Martinez v City of New York (20 Misc 3d 1111 [A], 2008 NY Slip Op 51321[U] [Sup Ct, NY County 2008]). According to the property owners, the sidewalk area at issue was part of a designated bus stop, based on the deposition of Tajinder Jassal, the New York City director of bus stop management. Jassal testified at his deposition that the bus stop area on the north side of East 125th Street between Second and Third Avenues is 158 feet long, beginning 20 feet west of Second Avenue. (Heilman affirmation, exhibit B [Jassal EBT] at 9.) Plaintiff argues that the area is not part of a bus stop, but rather part of the “sidewalk” for purposes of Administrative Code § 7-210.
*318 “On September 14, 2003, with the passage of section 7-210 of the Administrative Code of the City of New York, the duty to maintain and repair public sidewalks, within the City of New York, and any liability for the failure to do so, was shifted, with certain exceptions, to owners whose property abuts the sidewalk. Accordingly, owners of nonexempted properties must now keep the sidewalks abutting their properties in a reasonably safe condition, much in the same way they are obligated to maintain their respective premises.” (Early v Hilton Hotels Corp., 73 AD3d 559, 560 [1st Dept 2010] [citations omitted].)
The City Council enacted this local law in order to transfer tort liability from the City to abutting property owners as a cost-saving measure, reasoning that the law would not only save the City millions of dollars but that it would also encourage abutting property owners to comply with their obligations under the Administrative Code, resulting in safer sidewalks. (Rep of Infrastructure Div, Comm on Transp, June 27, 2003, Local Law Bill Jacket, Local Law No. 49 [2003] of City of NY.) Section 7-210 does not define the term “sidewalk,” but “the language of section 7-210 ‘mirrors the duties and obligations of property owners with regard to sidewalks set forth in Administrative Code sections 19-152 and 16-123.’ ” (Vucetovic, 10 NY3d at 521.)
In Vucetovic, the plaintiff stepped into a tree well and tripped on the cobblestone surrounding the area. (10 NY3d at 519.) The plaintiff alleged that the abutting property owner failed to maintain the sidewalk in a reasonably safe condition, in violation of Administrative Code § 7-210. The Court of Appeals held that a tree well is not part of the sidewalk for purposes of section 7-210 of the Administrative Code. (Id. at 518-519.) The Court stated,
“we are guided by the principle that ‘legislative enactments in derogation of common law, and especially those creating liability where none previously existed,’ must be strictly construed . . .
“If the City Council desired to shift liability for accidents involving tree wells exclusively to abutting landowners in derogation of the common law, it needed to use specific and clear language to accomplish this go£d.” (Id. at 522.)
Unlike the plaintiff in Vucetovic, plaintiff in this case did not trip and fall in a tree well, which is installed and embedded in a *319 sidewalk. The property owners point out that, at common law, “[t]he City of New York ... is responsible for the maintenance of bus stops within the City of New York, including the roads, curbs, and sidewalks attendant thereto.” (Shaller v City of New York, 41 AD3d 697, 698 [2d Dept 2007] [finding plaintiffs failed to state a cause of action against the New York City Transit Authority for failure to maintain the roadway adjacent to the bus stop].) The issue presented is whether the City Council desired to shift liability for accidents within bus stops and “sidewalks attendant thereto” exclusively to abutting landowners in derogation of the common law.
Since Vucetovic, few cases have addressed whether a property owner has a duty under section 7-210 to maintain the sidewalk area at or near a bus stop, or within a bus shelter. In Smith v 125th St. Gateway Ventures, LLC (75 AD3d 425, 425 [1st Dept 2010]), the Appellate Division, First Department held that “a city sign or signpost is not part of the ‘sidewalk’ for purposes of section 7-210 of the Administrative Code of the City of New York.” Thus, a city signpost for a bus stop would not be a part of the sidewalk, for purposes of Administrative Code § 7-210. In Phillips v Atlantic-Hudson, Inc. (105 AD3d 639 [1st Dept 2013]), the Appellate Division, First Department ruled that the abutting property owners had no duty under Administrative Code § 7-210 to clear snow and ice from a designated bus stop area where plaintiff allegedly slipped and fell. In Garcia-Martinez (20 Misc 3d 1111[A], 2008 NY Slip Op 51321[U], *4), Justice Donna Mills ruled that “[Administrative Code] § 7-210 does not impose . . . upon abutting landowners the responsibility for maintenance of snow and ice at a bus stop or bus shelter.”
However, none of these cases define “bus stop,” and they provide little guidance in this case. In Phillips and in Garcia-Martinez, the plaintiffs allegedly slipped and fell due to snow and ice at a bus stop.
The City’s responsibility to remove snow and ice is specifically addressed in the Administrative Code. Section 16-124.1 (b) of the Administrative Code requires the Commissioner of the Department of Sanitation to submit snow plowing and removal plans for each borough annually to the City Council, and the plans must address plowing and/or removal of snow and ice adjacent to bus stops, among other areas. Section 16-124.1 (a) (2) of the Administrative Code defines “bus stop” as “a location that is not a bus shelter, designated by signage for New York city transit authority vehicles to pick up or discharge pas *320 sengers, which location includes five feet of the sidewalk and the gutter immediately adjacent to the curb for the portion of such curb.” In contrast, there is no provision similar to Administrative Code § 16-124.1 (a) (2) that deals with the City’s responsibility for repairing structural sidewalk defects around bus stops, signs or shelters.
Assuming, only for the sake of argument, that the definition of “bus stop” under Administrative Code § 16-124.1 (a) (2) should apply here, it is undisputed that plaintiff did not trip and fall within five feet of a bus stop sign.[1] According to plaintiff, she fell approximately 55 feet away from the nearest bus stop pole. (Bednark aff ¶ 8.) Plaintiff claims that the bus that typically pulls up to this bus stop is “always 40 feet long.” {Id. ¶ 11.) If a bus pulled up to and stopped at the bus stop sign, plaintiff herself concludes that “the rear doors will open far from the defect.” {Id. ¶ 12.)
Contrary to the property owners’ contention, Jassal’s testimony about the width and length of the bus stop area did not establish that the sidewalk area where plaintiff allegedly tripped and fell should be considered as within a bus stop. When asked what he meant by “width of the bus stop,” Jassal testified that he was referring to the bus lane on the roadway. (Jassal EBT at 40.) Therefore, the distance he testified to at his deposition is not relevant to the issue of whether the sidewalk area where plaintiff allegedly tripped and fell should be, for the purposes of Administrative Code § 7-210, considered part of the bus stop under the City’s responsibility.
Plaintiff did not trip and fall because of a structure installed in the sidewalk or because of snow or ice. On the date of plaintiffs alleged trip and fall, there apparently was no bus stop sign in the area where plaintiff allegedly tripped and fell.[2] Plaintiff did not trip and fall on a sidewalk flag upon which a bus shelter sits.
*321 Moreover, this case does not concern a preexisting structural change made by the City or another entity to the sidewalk. This case does not concern any hardware or structure installed in the sidewalk akin to those objects that have traditionally triggered application of the special use doctrine. (See e.g. Weiskopf v City of New York, 5 AD3d 202, 203 [1st Dept 2004]; Petty v Dumont, 77 AD3d 466, 468 [1st Dept 2010].)
At issue here is responsibility for repair of a broken sidewalk unrelated to any structure installed in the sidewalk. To adopt the property owners’ view would be contrary to the expressed intention of the City Council in enacting section 7-210 of the Administrative Code. Moreover, it would expand the Vucetovic exception beyond that intended by the Court of Appeals, causing the exception to swallow the rule. It would create uncertainty for the City, abutting property owners, and injured pedestrians in determining what entity is responsible for maintaining a sidewalk, and which portion of the sidewalk must be maintained by which entity.
Maintaining the sidewalk area at issue in a reasonably safe condition would not have interfered with any city structure sitting on, or installed in, a sidewalk flag.[3] Therefore, on June 10, 2008, the area where plaintiff allegedly tripped and fell was not “within a designated public bus stop” (Breheny affirmation ¶ 5), and thus was not under the City’s responsibility to maintain. Accordingly, the abutting property owners had the responsibility for maintaining the subject sidewalk area on the accident date, June 10, 2008. The City had no duty to maintain the sidewalk area where plaintiff allegedly tripped and fell.
Therefore, the City’s motion for summary judgment dismissing the complaint as against it is granted. The court need not reach the City’s additional ground for summary judgment, lack of prior written notice. The cross claims against the City are dismissed.
IL
Defendants, “as the owners of property abutting the public sidewalk, may be held liable in negligence for injuries resulting from sidewalk defects.” (Sehnert v New York City Tr. Auth., 95 AD3d 463, 464 [1st Dept 2012], citing Administrative Code § 7-210.) “[S]ection 7-210 does not impose strict liability upon the *322 property owner, and the injured party has the obligation to prove the elements of negligence to demonstrate that an owner is liable.” (Khaimova v City of New York, 95 AD3d 1280, 1281-1282 [2d Dept 2012].) Therefore, on a motion for summary judgment dismissing a cause of action pursuant to section 7-210, “a property owner has the initial burden of demonstrating that it neither created the defective condition nor had actual or constructive notice of its existence for a sufficient length of time to discover and remedy it.” (Garcia v City of New York, 99 AD3d 491, 492 [1st Dept 2012].)
Questions of fact exist as to whether the property owners had actual notice of the sidewalk condition. Alam testified at his deposition on September 27, 2010 that he visited and inspected the premises every day for two years prior to plaintiffs alleged accident, and he never saw the condition that plaintiff claims caused her to trip and fall. (Alam EBT at 92-95.) However, at Alam’s deposition on April 25, 2012, he was shown photographs taken shortly after the accident, which clearly show the defect. (Heilman affirmation, exhibit D [Alam EBT, Apr. 25, 2012] at 14.) Alam was asked, “How long had the sidewalk appeared in the condition depicted in Defendants’ Exhibit C?” (Id.) Alam testified as follows:
“A. I don’t know. Since I take over in 2006, I see like this.
“Q. Did you ever complain to the landlord about the condition of the broken sidewalk?
“A. No.
“Q. But it’s been there since at least 2006, fair statement?
“A. Yeah, before I take over it was there like this.” (Id. at 15.)
Thus, issues of fact exist as to whether Alam had actual notice of the sidewalk condition.
Questions of fact also arise as to whether the property owners had constructive notice of the sidewalk condition. “[Constructive notice may only be imposed where a defect is visible and apparent and has existed for a sufficient length of time prior to the accident to permit [defendants] to discover and remedy it.” (Alexander v New York City Tr., 34 AD3d 312, 313 [1st Dept 2006] [internal quotation marks omitted].)
The photographs, included in plaintiffs affidavit, taken five days after the accident, suggest a condition that is neither *323 transitory nor recent in origin. (Bednark aff ¶¶ 4-6.) The court notes that the plaintiff submits a Big Apple Map from 2003. (Heilman affirmation, exhibit H.) Symbols on the map along the north side of East 125th Street, near the corner of Second Avenue, appear to correspond to raised or uneven portions of sidewalk and possibly an obstruction protruding from the sidewalk. Plaintiff does not claim that the Big Apple Map was ever served on the property owners. It appears that plaintiff submitted the map to show that the City had been given notice via the 2003 notations of sidewalk defects and that the sidewalk condition at issue might have existed since 2003. The court does not opine on the admissibility of the Big Apple Map at trial where there will be no issue of prior written notice to the City because the City is no longer a party.
Conclusion
Accordingly, it is hereby ordered that the defendant City of New York’s motion for summary judgment (sequence No. 003) is granted and the complaint is dismissed in its entirety as against said defendant, with costs and disbursements to said defendant as taxed by the Clerk of the Court, and all cross claims against this defendant are dismissed, and the Clerk is directed to enter judgment accordingly in favor of said defendant; and it is further ordered that defendants Heron Real Estate Corp., BP America, Inc., and Accede, Inc.’s motion for summary judgment (sequence No. 002) is denied; and it is further ordered that the action is severed and continued against the remaining defendants.

. The definition of “bus stop” in section 16-124.1 of the Administrative Code contextually appears to pertain to clearing snow and ice from a length of five feet of the sidewalk along (i.e. parallel to) the curb. It does not specify how far from the curb toward the building line must be cleared. There is no indication that this definition, if applicable, would cover the sidewalk area at issue.

. The property owners point out that plaintiff stated in her affidavit that, subsequent to plaintiffs alleged trip and fall, “there is now a bus stop pole approximately two feet to the [w]est of the defect area.” (Bednark aff ¶ 9.) However, plaintiff also averred “that bus stop pole was not there at the time of my fall.”

. Under 34 RCNY 2-09 (f) (4) (viii), “[a]ll flags containing substantial defects shall be fully replaced. Patching of individual flags is not permitted.”