**Wasserman v City of New York**

2025 NY Slip Op 30852(U)

March 17, 2025

Supreme Court, Kings County

Docket Number: Index No. 511025/2018

Judge: Ingrid Joseph

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

At an IAS Term, Part 83, of the Supreme Court of the State of New York, held in and for the County of Kings, at the Courthouse, at 360 Adams Street, Brooklyn, New York, on the 17th day of March, 2025.

PRESENT:

HON. INGRID JOSEPH,

                                        Justice.

----------------------------------------------------------------------------X

MICHELLE WASSERMAN, as Administrator of the
Estate of SALVATORE BARBELLA, Deceased,

                                        Plaintiff,

                    -against-

THE CITY OF NEW YORK, DEPARTMENT OF TRANSPORTATION,
and MILL BASIN BRIDGE CONSTRUCTORS, LLC,

                                        Defendants.

----------------------------------------------------------------------------X[1]

**DECISION AND ORDER**

Index No. 511025/2018

Mot. Seq. Nos. 4-6

The following e-filed papers read herein:                NYSCEF Doc Nos.:

Notice of Motion, Affidavits (Affirmations) Annexed_____        100-127; 137-145; 158-187
Opposing Affidavits (Affirmations)_____        146-157; 192-199
Affidavits/ Affirmations in Reply _____        188; 201-203; 204-209

In this action to recover damages for personal injuries sustained in a single-car accident with a stationary object, plaintiff Michelle Wasserman, as the administrator of the estate of Salvatore Barbella, deceased ("plaintiff"), moves (or cross-moves, as applicable), and defendants the City of New York ("City"), the City of New York sued herein as Department of Transportation ("NYCDOT"), and Mill Basin Bridge Constructors, LLC ("MBC" and collectively with City and NYCDOT, "defendants") jointly move for the following relief:[2]

In Seq. No. 4, plaintiff moves for: (1) an order, pursuant to CPLR 3212, granting her partial summary judgment on the issue of liability against all defendants; and (2) leave, pursuant

_____

[1] The caption, as set forth herein, reflects the recent amendment pursuant to the so-ordered Stipulation to Amend Caption, dated October 11, 2024 (Fisher, J.), to reflect the intervening passing of original plaintiff Salvatore Barbella from unrelated causes in December 2023 at the age of 48.
[2] To maintain continuity of discussion, the Court rearranged the order of motions/cross-motion and the relief requested therein.

[* 1]

to CPLR 3025, to further amend her complaint to add a separate cause of action for gross negligence and a demand for punitive damages against MBC;[3]

In Seq. No. 6, plaintiff cross-moves for an order, pursuant to CPLR 3126, striking defendants' joint answer,[4] precluding them from producing any evidence on the issue of liability at trial, and granting her related relief; and

In Seq. No. 5, defendants move, in relevant part, for an order: (1) pursuant to CPLR 2004 and 22 NYCRR 202.21 (e), vacating plaintiff's Note of Issue, dated October 28, 2022 (NYSCEF Doc No. 135), on the basis of her alleged failure to provide discovery; (2) pursuant to CPLR 2201, staying the trial of this matter until completion of outstanding discovery; and (3) pursuant to CPLR 2004 and 3212 (a), extending defendants' time to move for summary judgment until 60 days after completion of discovery.[5]

In the early morning of Friday, January 5, 2018, plaintiff's decedent, Salvatore Barbella ("Barbella"), was driving to work in his 2016 Ford Explorer (the "SUV") for the start of his 6:30 a.m. shift at the JFK airport. Barbella was driving eastbound on the Belt Parkway at approximately 40 miles per hour. The headlights and lower lights of his SUV were on. The traffic was light; the weather was cold; and it was not raining or snowing.

As Barbella "was driving [his SUV] in the left lane [of the eastbound Belt Parkway and was] coming around the bend, [he observed] no lights [in the eastbound Belt Parkway]. It was dark. [Suddenly, his SUV was] impaled on [the edge of] a concrete barrier. It wasn't lit up, that whole area [of the road]."[6] As Barbella elaborated in his pretrial testimony, "[i]t was dark in that area [of eastbound Belt Parkway]. I made the [right] turn. There [were] no clear lane markings or nothing like that when I was making the turn. It was dark. There were no lights over there. *Lo[] and behold[,] I hit a concrete barrier that should have been lit up*."[7] Although Barbella observed the "[white lane] markings" on the eastbound Belt Parkway in the area *preceding* the place of the accident, "there [were] no [lane] markings, there [were] no visible lanes or [any]thing [in the place of the accident]. It's just a bad area. Dangerous."[8] The concrete barrier [or the median

---

[3] The operative pleading is the Amended Complaint, dated July 3, 2018 (NYSCEF Doc No. 7).

[4] The operative pleading MBC's Verified Answer to Amended Complaint, dated December 4, 2018 (NYSCEF Doc Nos. 37 and 106). Although no answer on behalf of the other defendants appears in the e-filed records for this action, the same counsel represents all three defendants.

[5] Defendants' additional request in Seq. No. 5 to conduct an IME of the original plaintiff has been rendered moot by his subsequent death from unrelated causes.

[6] Barbella's EBT transcript, page 58, lines 16-22; page 61, line 24 to page 62, lines 4 and 14-18; page 63, lines 22-24.

[7] Barbella's EBT transcript, page 59, lines 13-21; page 61, lines 11-18 (emphasis added).

[8] Barbella's EBT transcript, page 60, lines 6-10 and 16-18.

2

divider] which Barbella struck with his SUV was close to the left eastbound lane in which he was traveling because it was separating or in his words "splitting" the left lane from the other lanes.[9] There were no "cones" or "sand barrels" leading up to the place of the accident, nor in front of or before the concrete barrier/divider at issue.[10]

The responding highway patrol officer, Justine DeSimone ("Highway PO DeSimone"), corroborated Barbella's description of the place of the accident. Highway PO DeSimone testified that, on his arrival at the place of the accident, he observed that Barbella's SUV had struck "the end of a concrete median that was separating the left and center lanes," and that "there [were] no lane markings, signs or warnings to indicate the sudden lane separation on roadway."[11] Highway PO DeSimone further testified that the "lighting at the time . . . was poor. [The accident scene] was not very well lit."[12] Highway PO DeSimone described the place of the accident as "an active construction zone," without any "lane markings" and without any "sand barrels . . . leading up to the median in the days prior to"[13] Barbella's accident."[14]

The Court will first turn to plaintiff's motion seeking partial summary judgment on the issue of liability (Seq. No. 4). "A plaintiff in a negligence action moving for summary judgment on the issue of liability must establish, prima facie, that the defendant breached a duty owed to the plaintiff and that the defendant's negligence was a proximate cause of the alleged injuries" (*Tsyganash v Auto Mall Fleet Mgt., Inc.*, 163 AD3d 1033, 1033-1034 [2d Dept 2018]). "To be entitled to partial summary judgment[,] a plaintiff does not bear the . . . burden of establishing . . . the absence of his or her own comparative fault" (*Rodriguez v City of New York*, 31 NY3d 312, 324-325 [2018]).

In support of this branch of her motion, plaintiff submitted, among other documents, the report of her expert engineer, Joseph J. McHugh, P.E. ("plaintiff's expert engineer"), as well as

---

[9] Barbella's EBT transcript, page 65, lines 12-23.

[10] Barbella's EBT transcript, page 70, lines 2-11; page 77, lines 9-17.

[11] DeSimone's EBT transcript, page 23, line 10 to page 25, line 17; page 32, lines 18-21 ("[U]p to that concrete median [which Barbella's SUV struck,] there was nothing . . . there [meaning, no lane markings, whether faded or not].").

[12] DeSimone's EBT transcript, page 30, lines 5-9.

[13] DeSimone's EBT transcript, page 32, line 22 to page 33, line 9; page 41, lines 17-20.

[14] Approximately five hours before Barbella's accident, another driver, Abraham Steier ("Steier"), had struck the same (or nearly the same) barrier/divider with his vehicle, likewise in the eastbound area of Belt Parkway. Steier's personal injury action against defendants is pending before Justice Joy F. Campanelli under index No. 511027/18 (the "related action"). By short-form order, dated July 19, 2023, Justice Campanelli denied (without explanation) the branch of Steier's motion which was for partial summary judgment on the issue of liability in the related action (NYSCEF Doc No. 176 in the related action). Justice Campanelli's denial of Steier's motion for partial summary judgment on the issue of liability in the related action has no significance on the Court's determination of liability in this action.

3

[* 3]

the pretrial testimony of Barbella and DeSimone. Plaintiff's expert engineer opined, "[w]ithin the bounds of reasonable engineering and technical certainty," that MBC and/or NYCDOT caused or contributed to causing Barbella's accident by failing to take proper precautions to protect motorists, particularly when no construction work was being performed in the early morning hours, from colliding with the concrete barrier/median that had been placed at, near, or close to the center of the eastbound section of Belt Parkway in which Barbella was traveling at the time of his accident.[15] As Barbella testified at his pretrial deposition, and as Highway PO DeSimone corroborated at the latter's pretrial deposition, as the eastbound Belt Parkway was curving to the right, there were *no* lane markings, *no* signs, *no* lights, *no* sand drums or other impact-reducing barriers, and *no* reflectors to warn Barbella, at the time and place of this accident, of the uncommon upcoming danger – a sudden lane separation of the eastbound Belt Parkway by a concrete barrier/median that was both unprotected and unlit (*see Pellegrino v State*, 121 AD2d 612, 613 [2d Dept 1986]; *see also Hicks v State*, 4 NY2d 1, 7 [1958] [collecting authorities]; *Canepa v State*, 306 NY 272, 277 [1954]; *Petty v Dumont*, 77 AD3d 466, 467 [1st Dept 2010]; *Gneco v City of New York*, 25 AD3d 355, 357 [1st Dept 2006]). Equally important, Barbella's accident was not an occurrence in which the evidence as to what caused his SUV to strike the barrier/median was lacking, nor was it an occurrence where the accident would have happened even if defendants had not been negligent (*see Humphrey v State*, 90 AD2d 901, 902 [3d Dept 1982], *affd* 60 NY2d 742 [1983]).

In opposition, defendants' submissions failed to raise a triable issue of fact. The affidavit of defendants' expert engineer Kristopher J. Seluga, M.E., P.E. ("defendants' expert engineer"), attempts to manufacture feigned issues of fact as to: (1) whether any "temporary traffic control devices" were present near the scene of the accident, notwithstanding the deposition testimony of both Barbella and Highway PO DeSimone (collectively, the "accident-scene eyewitnesses") that there were none at the time and place of the accident; (2) the condition of "lighting" at the scene of the accident, even though the accident-scene eyewitnesses consistently testified that the lighting was poor at the time and place of the accident; (3) whether any "lane markings" were present at the scene of the accident (again, the accident-scene eyewitnesses both testified that there were no lane markings whatsoever at the time and place of the accident); and (4) whether any "sand drum arrays" were presented at or near the scene of the accident, even though the

---

[15] Plaintiff's expert engineer summarized his findings at the unnumbered pages 10 and 11 of his report, dated February 3, 2022 (part of NYSCEF Doc No. 108).

accident-scene eyewitnesses both testified that there were no sand drum arrays or any other impact-reducing barrels at the time and place of the accident.[16]

The opinion of defendants' expert engineer that defendants complied with the Maintenance and Protection of Traffic Standards is belied by Barbella's undisputed testimony that on a weekday morning at 4:30 a.m., his SUV struck an unmarked, unlit concrete barrier/median which, essentially, had been placed – and had been permitted to remain as a hidden danger – in the middle of a highway.[17]

Defendants' expert engineer's position (in ¶¶ 82-83 of his report) that the concrete median/barrier at issue: (1) "was not a temporary traffic barrier but was instead a section of the partially built[,] permanent median barrier that would eventually separate eastbound and westbound traffic on the completed roadway," and (2) "was not being used as a channeling device but simply separated the left and center eastbound lanes," is completely irrelevant. What matters is that the concrete barrier/median at issue represented an uncommon danger to motorists like Barbella who were driving around the immediately preceding right turn. Also inapposite is defendants' expert engineer's opinion (in ¶ 84 of his report) that the project photographs "do not substantiate . . . Barbella's testimony that the collision occurred *at* a right 'bend' in the road." Whether the accident happened *at* a right bend or immediately *after* the right bend does not change the fact that the unmarked, unlit concrete barrier/median at issue was a hidden danger to passing motorists. Defendants' expert engineer's reliance (in ¶ 86 of his report) on the photographs of the accident scene, taken two weeks *before* the accident, depicting "traffic drums, sand barrels/crash attenuators, lane markings, a lane split sign, and overhead lights," does not affect the outcome. It is the time and place of the accident (January 5, 2018 at 4:30 a.m.) that matter, rather than what is depicted in the two-week-old photographs.[18]

Next, although MBC's deadline for completing repairs to the sand drum arrays had not yet expired by the date/time of the accident (¶ 90 of his report), this has no relevance here. Lastly, while the Daily Work Reports and the Engineer's Daily Project Diary may have appeared satisfactory on paper to defendants' expert engineer (in ¶¶ 105-106 of his report), road protection and safety are ultimately human systems, subject to human error. One such error or a

---

[16] Defendants' Expert Engineer's Report, dated December 17, 2022, ¶¶ 49-71 (NYSCEF Doc No. 147).

[17] Defendants' Expert Engineer's Report, ¶¶ 72-81.

[18] Further unavailing is defendants' reliance on the affidavit of Laborer Justin Jiskra, dated August 21, 2019, explaining how a "sand drum array," typically involving 13 barrels, is assembled, placed, and repaired (NYSCEF Doc No. 150). The accident-scene eyewitnesses both testified that there was not a single drum or barrel (let alone an array) at the time and place of Barbella's accident.

5

[* 5]

combination of such errors proximately caused Barbella's accident.[19] Accordingly, the branch of plaintiff's motion for summary judgment on the issue of liability as against defendants is granted.

The Court next turns to the portion of plaintiff's motion seeking leave to amend the complaint to plead gross negligence against MBC. As a general rule, leave to amend a pleading is freely granted so long as the proposed amendment does not cause "unfair[] prejudice or surprise [to] the opposing party, or is palpably insufficient or patently devoid of merit" (*Cussick v R.L. Baxter Bldg. Corp.*, 228 AD3d 614, 616 [2d Dept 2024] [internal quotation marks omitted]). "To constitute gross negligence, a party's conduct must smack of intentional wrongdoing or evince a reckless indifference to the rights of others" (*Skywest, Inc. v Ground Handling, Inc.*, 150 AD3d 922, 923 [2d Dept 2017] [internal quotation marks omitted]). Such conduct is "wanton or malicious or activated by evil or reprehensible motives" (*Anzolone v Long Is. Care Ctr., Inc.*, 26 AD3d 449, 451 [2d Dept 2006] [internal quotation marks omitted]). Moreover, "[p]unitive damages have been described as a hybrid between a display of ethical indignation and the imposition of a criminal fine, and reflect the community's condemnation of one who wilfully [sic] causes hurt or injury to another" (*Gomez v Cabatic*, 159 AD3d 62, 72 [2d Dept 2018] [internal quotation marks omitted]).

Here, nothing in the record suggests any facts constituting willful misconduct or gross negligence on the part of MBC. Leave to amend to plead gross negligence and punitive damages against MBC is denied as devoid of merit (*see Skywest, Inc. v Ground Handling, Inc.*, 150 AD3d 922, 924 [2d Dept 2017]; *Jones v LeFrance Leasing LP*, 127 AD3d 819, 821 [2d Dept 2015]).

The Court will now discuss plaintiff's cross-motion for sanctions pursuant to CPLR 3126 (Seq. No. 6). Plaintiff cross-moves for an order striking defendants' answer, precluding them from offering evidence on the issue of liability, and granting her related relief. Plaintiff's cross-motion must be denied in its entirety because she waived her objection to defendants' alleged failure to meet their disclosure obligations by cross-moving for such relief two months *after* she filed the note of issue and certificate of readiness (*see J.H. v City of New York*, 170 AD3d 816,

---

[19] As Labor Foreman Michael Curley averred in his affidavit, dated August 21, 2019, "[w]hen I reported for work on Friday 1/5/2018[,] I was told by [site superintendent] Pete Milano that additional barrels had been hit by vehicle traffic[,] and we repeated this procedure [of replacing the barrels]. *This is common for a roadwork project site and it's usually caused by driver stupidity. In general, we were called to do this work about once per week on different areas of this project site*" (NYSCEF Doc No. 149) (emphasis added). Because the damaged or missing "barrels, drums, etc." were common in the area of Belt Parkway then under construction, motorists' road safety required a correspondingly heightened level of care.

6

[* 6]

818 [2d Dept 2019]; *Iscowitz v County of Suffolk*, 54 AD3d 725 [2d Dept 2008]; *cf. Nationstar Mtge., LLC v Jackson*, 192 AD3d 813, 816 [2d Dept 2021]).

In light of the Court's granting of partial summary judgment on the issue of liability, to plaintiff, defendants' motion for an order vacating the note of issue, extending their time to move for summary judgment, and granting them related relief (Seq No. 5) is denied as moot.

Accordingly, it is hereby

**ORDERED** that in Seq. No. 4, the branch of plaintiff's motion which is for partial summary judgment on the issue of liability is granted, and the remainder of her motion which is for leave to amend is denied; and it is further

**ORDERED** that in Seq. No. 6, plaintiff's cross-motion for an order striking defendants' answer, precluding them from offering evidence on the issue of liability, and granting them related relief is denied in its entirety; and it is further

**ORDERED** that in Seq. No. 5, defendants' motion for an order vacating the note of issue, extending their time to move for summary judgment, and granting them related relief is denied in its entirety as moot; and it is further

**ORDERED** that plaintiff's counsel is directed to electronically serve a copy of this decision and order with notice of entry on defendants' counsel and to electronically file an affidavit of service thereof with the Kings County Clerk.

The foregoing constitutes the decision and order of the court.

Hon. Ingrid Joseph, J.S.C.

Hon. Ingrid Joseph
Supreme Court Justice

7